# EXHIBIT 1

## COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX, ss**                                        **MIDDLESEX SUPERIOR COURT**
                                                        **CIVIL ACTION NO.  2381CV00868**

---

**ROBERTA BISCAN, INDIVIDUALLY**
**AND AS PARENT OF** ▮▮▮ C.B ▮▮▮

**JENNIFER BAPTISTA AND AARON BAPTISTA, INDIVIDUALLY**
**AND AS PARENTS OF** ▮▮▮ N.B. ▮▮▮

**SABRINA VELOZA, INDIVIDUALLY**
**AND AS PARENT OF** ▮▮▮ R.C. 1 ▮▮▮

**KATHRYN MARSH AND MARK CHMIEL, INDIVIDUALLY**
**AND AS PARENTS OF** ▮▮▮ R.C. 2 ▮▮▮

**COLLEEN LAVORATO AND JOSEPH LAVORATO, INDIVIDUALLY**
**AND AS PARENTS OF** ▮▮▮ C.L. ▮▮▮

**NICOLETTE DOUCETTE AND ROSARIO LOFARO, INDIVIDUALLY**
**AND AS PARENTS** ▮▮▮ A.F. ▮▮▮

**JEANNETTE LUTI AND RICHARD LUTI, INDIVIDUALLY**
**AND AS PARENTS OF** ▮▮▮ J.L. ▮▮▮

**CASSANDRA NICHOLS, INDIVIDUALLY**
**AND AS PARENT OF** ▮▮▮ G.S. ▮▮▮ **,**

**ERIKA MELLSTROM and CLIFTON CLARK, III, INDIVIDUALLY**
**AND AS PARENTS OF** ▮▮▮ C.C. ▮▮▮

**SABRINA FUCILE and ALLEN FUCILE, INDIVIDUALLY**
**AND AS PARENTS OF** ▮▮▮ R.F. ▮▮▮
          **Plaintiffs**

**vs.**

**TOWN OF WILMINGTON,**
**KIMBERLY CUMMINGS, VICTORIA FITZGERALD, JESSICA TALBOT,**
**KELLY FOGGERTY, ALICE BROWN-LEGRAND, PAUL RUGGIERO,**
**CHARLOTTE KING AND GLENN BRAND**
          **Defendants**

---

## <u>COMPLAINT AND DEMAND FOR JURY</u>

### INTRODUCTION

1.  This action, against the TOWN OF WILMINGTON, KIMBERLY CUMMINGS, VICTORIA FITZGERALD, JESSICA TALBOT, KELLY FOGGERTY, ALICE BROWN-LEGRAND, PAUL RUGGIERO, CHARLOTTE KING, and GLENN BRAND, arises out of multiple incidents in which each of the plaintiffs, all of whom are severely disabled students, were physically and mentally abused while attending school in the Wilmington public schools. Plaintiffs seek relief through various federal, constitutional, and common law tort claims.

### PARTIES

2.  Plaintiff, **C.B**, a minor, by ROBERTA BISCAN, his mother and next friend (hereinafter referred to as "**C.B**"), is a resident of Wilmington, Middlesex County, Commonwealth of Massachusetts.

3.  Plaintiff, ROBERTA BISCAN, individually, brings this lawsuit as parent of her incapacitated son, **C.B** pursuant to Massachusetts General Laws Chapter 231, Section 85X.  She is an individual residing in Wilmington, Middlesex County, Massachusetts.

4.  Plaintiff, **N.B.**, a minor, by JENNIFER BAPTISTA, his mother and next friend (hereinafter referred to as "**N.B.**"), is a resident of Wilmington, Middlesex County, Commonwealth of Massachusetts.

5.  Plaintiffs, JENNIFER BAPTISTA and AARON BAPTISTA, individually, bring this lawsuit as parents of their incapacitated son, **N.B.** pursuant to Massachusetts General

Laws Chapter 231, Section 85X.  They are individuals residing in Wilmington, Middlesex County, Massachusetts.

6.    Plaintiff, ████ R.C. 1 ████, a minor, by SABRINA VELOZA, his mother and next friend (hereinafter referred to as "██ R.C. 1 ██"), is a resident of Wilmington, Middlesex County, Commonwealth of Massachusetts.

7.    Plaintiff, SABRINA VELOZA, individually, brings this lawsuit as parent of her incapacitated son, ██ R.C. 1 ██, pursuant to Massachusetts General Laws Chapter 231, Section 85X.  She is an individual residing in Wilmington, Middlesex County, Massachusetts.

8.    Plaintiff ████ R.C. 2 ████, a minor, by KATHRYN MARSH, his mother and next friend (hereinafter referred to as "██ R.C. 2 ██"), is a resident of Shirley, Middlesex County, Commonwealth of Massachusetts.

9.    Plaintiffs, KATHRYN MARSH, an individual residing in Shirley, Middlesex County, Massachusetts and MARK CHMIEL, an individual residing in Ayer, Middlesex County, Massachusetts, bring this lawsuit as parents of their incapacitated son, ██ R.C. 2 ██ pursuant to Massachusetts General Laws Chapter 231, Section 85X.

10.   Plaintiff, ████ C.L. ████, a minor, by COLLEEN LAVORATO, her mother and next friend (hereinafter referred to as "██ C.L. ██"), is a resident of Wilmington, Middlesex County, Commonwealth of Massachusetts.

11.   Plaintiffs, COLLEEN LAVORATO and JOSEPH LAVORATO, individually, bring this lawsuit as parents of their incapacitated daughter, ██ C.L. ██ pursuant to Massachusetts General Laws Chapter 231, Section 85X.  They are individuals residing in Wilmington, Middlesex County, Massachusetts.

12.     Plaintiff, **A.F.** , a minor, by NICOLETTE DOUCETTE,  his mother and next friend (hereinafter referred to as " **A.F.** "), is a resident of Wilmington, Middlesex County, Commonwealth of Massachusetts.

13.     Plaintiffs, NICOLETTE DOUCETTE and ROSARIO LOFARO, individually, bring this lawsuit as parents of their incapacitated son, **A.F.** pursuant to Massachusetts General Laws Chapter 231, Section 85X.  They are individuals residing in Wilmington, Middlesex County, Massachusetts.

14.     Plaintiff, **J.L.** , an incapacitated person, by his legal guardian JEANNETTE LUTI, is a resident of Wilmington, Middlesex County, Commonwealth of Massachusetts.

15.     Plaintiff, JEANNETTE LUTI and RICHARD LUTI, individually, bring this lawsuit as parents of their incapacitated son, **J.L.** pursuant to Massachusetts General Laws Chapter 231, Section 85X. They are individuals residing in Wilmington, Middlesex County, Massachusetts.

16.     Plaintiff, **G.S.** , a minor, by CASSANDRA NICHOLS, his mother and next friend (hereinafter referred to as **G.S.** ), is a resident of Wilmington, Middlesex County, Commonwealth of Massachusetts.

17.     Plaintiff, CASSANDRA NICHOLS, individually, brings this lawsuit as parent of her incapacitated son, **G.S.** pursuant to Massachusetts General Laws Chapter 231, Section 85X.  She is an individual residing in Wilmington, Middlesex County, Massachusetts.

18.     Plaintiff, **C.C.** , a minor, by his mother and next friend ERIKA MELLSTROM, is a resident of Wilmington, Middlesex County, Commonwealth of Massachusetts.

19. Plaintiffs, ERIKA MELLSTROM and CLIFTON CLARK, III, individually, bring this lawsuit as parents of their incapacitated son, ██████ **C.C.** ██████, pursuant to Massachusetts General Laws Chapter 231, Section 85X. They are individuals residing in Wilmington, Middlesex County, Massachusetts.

20. Plaintiff, ██████ **R.F.** ██████, a minor, by his mother and next friend, SABRINA FUCILE, is a resident of Wilmington, Middlesex County, Commonwealth of Massachusetts.

21. Plaintiff, SABRINA FUCILE and ALLEN FUCILE, individually, bring this lawsuit as parents of their incapacitated daughter, ██ **R.F.** ██ pursuant to Massachusetts General Laws Chapter 231, Section 85X. They are individuals residing in Wilmington, Middlesex County, Massachusetts.

22. Defendant, TOWN OF WILMINGTON, is a body politic and corporate duly organized under the laws of the Commonwealth of Massachusetts, with a principal place of business of 121 Glen Road, Wilmington, Middlesex County, Commonwealth of Massachusetts.

23. The Town of Wilmington is responsible for the administration of the Wildwood School which is a public elementary school within and for the Town of Wilmington

24. Defendant KIMBERLY CUMMINGS (hereinafter "Cummings") is an individual residing at 24 Miller Road, Wilmington, Middlesex County, Commonwealth of Massachusetts.

25. Cummings was employed as a teacher for the Town of Wilmington from 2003 through 2021. Cummings was assigned to classroom 7 at the Wildwood School for seventeen years and Shawsheen School for one year in 2005. Her employment ended in May 2021 after DCF began its investigation.

26.     Defendant, VICTORIA FITZGERALD (hereinafter "Fitzgerald"), is an individual residing at 6 Chandler Road, Wilmington, Middlesex County, Commonwealth of Massachusetts.

27.     Defendant Fitzgerald was employed as an assistant teacher at the Wildwood School from February 2017 through May 2021. Her employment ended after DCF began its investigation. Fitzgerald worked with Cummings in Classroom 7 at Wildwood School throughout her employment.

28.     Defendant KELLY FOGGERTY (hereinafter "Foggerty") is an individual with an address unknown to the Plaintiffs.

29.     Foggerty was employed as a teacher for the Town of Wilmington at the Wildwood School for all times relevant hereto.

30.     Defendant, JESSICA TALBOT (hereinafter "Talbot"), is an individual with an address unknown to the Plaintiffs.

31.     Talbot was employed as an assistant teacher for the Town of Wilmington at the Wildwood School for  all times relevant hereto. Talbot worked with Foggerty at Wildwood School for all times relevant hereto.

32.     Defendant, ALICE BROWN-LEGRAND (hereinafter "Legrand"), is an individual residing at 65 Sandalwood Circle, Tewksbury, Middlesex County, Massachusetts.

33.     Legrand was employed as the Director of Special Education for the Town of Wilmington, at all times relevant hereto.

34.     Defendant, CHARLOTTE KING (hereinafter "King"), is an individual residing at an address unknown to the Plaintiffs.

35.  KING was employed as the principal at Wildwood School for the Town of Wilmington from 2014 through 2021. Her employment ended after DCF began its investigation.

36.  Defendant, GLENN BRAND (hereinafter "Brand"), is an individual residing at an address unknown to the Plaintiffs.

37.  Brand was the superintendent for the public schools in and for the Town of Wilmington from in or about 2018 through the current date.

38.  Defendant, PAUL RUGGIERO (hereinafter "Ruggiero"), is an individual residing at 47 Forest Street, Wilmington, Middlesex County, Massachusetts.

39.  Ruggiero was the interim superintendent for the public schools in and for the Town of Wilmington at times relevant hereto.

## FACTS COMMON TO ALL CLAIMS

40.  The powers, duties and liabilities of Wildwood School and Shawsheen School are vested in and exercised by the Town of Wilmington.

41.  At all times relevant to this action, Defendant, Town of Wilmington, employed all school staff, faculty, counselors, principals and superintendents at Wildwood School and Shawsheen School.

42.  At all times relevant to this action, Wildwood School and Shawsheen School employees were acting under the color of law, under the color of their authority as Town of Wilmington employees, and within the scope of their employment with the Town of Wilmington.

43.  At all times relevant to this action, Cummings, Fitzgerald, Foggerty, Talbot and Legrand were under the disciplinary authority of King, Brand, Ruggiero and the Town of Wilmington.

44.   At all times relevant to this action, King was under the disciplinary authority of Brand, Ruggiero and the Town of Wilmington.

45.   At all times relevant to this action, Brand and Ruggiero were under the disciplinary authority of the Town of Wilmington.

46.   In 2005, Cummings physically abused and neglected ▮J.L.▮ resulting in broken blood vessels in ▮J.L.▮ eyes. Cummings used poor judgment in her application of ABA teaching, was not truthful with the student's parents, and refused to allow the student to go to the school nurse to address the broken blood vessels.

47.   The Town of Wilmington's school district failed to properly address this complaint with the student's parents for over two months.

48.   Between 2008 and 2013, Cummings was observed by other Wildwood School staff members to have inappropriate and potentially harmful physical interactions with the pre-kindergarten and kindergarten students in her classroom, including using her foot to move non-verbal students across the floor, physically handling students in a rough manner and pulling students up by the underarms.

49.   Staff members reported these incidents to school administrators.

50.   In 2014 Cummings was suspended for five days without pay for falsifying data to the then principal. She was suspended for inefficiency, incompetency, conduct unbecoming a teacher, insubordination and other just causes.

51.   From 2016 through 2021, Cummings was physically and verbally abusive to ▮N.B.▮ ▮R.C. 1▮, ▮R.C. 2▮ ▮C.L.▮  ▮A.F.▮  ▮C.C.▮ and ▮R.F.▮ These actions include:

   a.   used harsh language and bullied students in her classroom;

   b.   screamed at the students;

c.  pulled students by the back of their sweatshirts;

d.  emptied students' water bottles to prevent them from drinking and urinating in the classroom;

e.  ate the students' snacks;

f.  withheld snacks from the students;

g.   grabbed students by their wrist and dragged them to "time-out";

h.  grabbed students by their wrist and dragged them to the nurse's office;

i.  used forceful physical prompts;

j.  forcefully put students onto their chairs;

k.  ignored children when they cried in distress.

52.  In 2020, Cummings was suspended without pay after she pushed a pre-kindergarten student's elbow off the table in a way that the child could have fallen, denied the child water and did not follow that child's individualized education plan (hereinafter "IEP"). Cummings was suspended for incompetency, conduct unbecoming a teacher and other just cause.

53.  Although Cummings attended safety training, she did not complete certain parts of that training.

54.  Fitzgerald was present in classroom 7 from 2017 through 2021 and observed Cummings commit the above stated abuses. Fitzgerald failed to take any action to stop the abuse. Fitzgerald failed to report any of the above stated abuse to the Department of Children and Families (hereinafter "DCF") as is required by law.

55.  The school district failed and refused to report any of the above abuses to DCF as is required by law.

56.     School staff members reported the abuse committed by Cummings to the school district, including King, Legrand, Ruggiero and Brand.

57.     Legrand, King, Ruggiero and Brand were informed by various staff members and/or parents that Cummings had committed the above stated abuse but Legrand, King, Ruggiero and Brand  failed to report the abuse to DCF.

58.     Legrand, King, Ruggiero and Brand failed to impose appropriate disciplinary action against Cummings including requiring her to obtain retraining to correct her abusive behavior.

**R.C. 1**

59.     In March 2021, **R.C. 1** was a three-year-old boy with autistic spectrum disorder including severe language impairment.

60.     **R.C. 1** attended Wildwood School in a preschool class from September 2020 through March 2021. **R.C. 1** was placed in classroom 7 where Cummings was the primary teacher and Fitzgerald was the assistant teacher.

61.     Shortly after entering classroom 7, **R.C. 1** began kicking, refusing to go into classroom 7 and throwing tantrums in the hallway. He regressed with his disabilities and was not happy.

62.     **R.C. 1** came home from school with bruising thumbprint in size and shaped like fingerprints on his thighs which were consistent with someone holding him down by the legs. He also arrived home with bruising from his waist to his feet. He also had bumps on his head. On one occasion he came home in girls pants.

63.     **R.C. 1**'s parents reported their concerns regarding Cummings' abusive behavior to the school administration, specifically including King.

64.   As a result of Cummings' behavior, **R.C. 1** regressed in many of his disability related

      issues.

65.   After **R.C. 1**'s parents removed **R.C. 1** from Cummings' classroom, **R.C. 1**'s regressions

      ceased and he began making significant improvements.

66.   **R.C. 1** has suffered severe physical and emotional distress, including feelings of anxiety.

67.   Sabrina Veloza has suffered a loss of parental consortium, causing severe emotional

      distress, including feelings of shame, anxiety and guilt.

**N.B.**

68.   In February 2021, **N.B.** was a six-year-old boy with autistic spectrum disorder

      including severe language impairment.

69.   **N.B.** attended Wildwood School in a preschool class from January 2018 through

      September 2020. During this time, he loved school. He did well in school and he made

      steady positive progress.

70.   In September 2020, **N.B.** was moved to classroom 7 at Wildwood School. Shortly after

      being transferred to classroom 7, **N.B.** began to resist going to school. He regressed

      with his disabilities and was not happy.

71.   In February 2021, Cummings injured **N.B.**'s wrists while dragging him. Following this

      incident, **N.B.**'s pediatrician filed a complaint with DCF.

72.   On May 4, 2021, Cummings again physically injured **N.B.** **N.B.**'s pediatrician noted

      three ½ inch linear patterned yellow dotted bruises on **N.B.**'s lower back.

73.   **N.B.** would often say "no school, teacher hurt me". **N.B.** appeared traumatized when

      his parents brought him to classroom 7 and was reluctant to enter the classroom. **N.B.**

      would crumble into a ball when his parents mentioned the word "teacher".

74.   **N.B.**'s parents consistently reported their concerns regarding Cummings' abusive

behavior to the school administration, specifically including King and Brand.

75.   As a result of Cummings' behavior, **N.B.** often came home from school hungry, had

increased staring spells, had increased emotional lability, had agitated behaviors, and had

sleep difficulties and nightmares.

76.   After Cummings was removed from classroom 7, **N.B.**'s unresponsive staring stopped,

his regressions ceased and he began making significant improvements.

77.   **N.B.** continues to undergo trauma therapy to cope with Cummings' abusive behavior.

**N.B.** has suffered severe physical and emotional distress, including feelings of anxiety.

78.   Jennifer Baptista and Aaron Baptista have suffered a loss of parental consortium, causing

severe emotional distress, including feelings of shame, anxiety and guilt.

**R.C. 2**

79.   In April 2021, **R.C. 2** was a five-year-old boy with autistic spectrum disorder  including

severe language impairment.

80.   **R.C. 2** has attended Wilmington Schools since he was three years old. Prior to March

2021, he generally enjoyed school and was making progress with his disabilities and with

general learning.

81.   In or about March 29, 2021, **R.C. 2** was assigned to classroom 7 at Wildwood School.

Within the first week of being in classroom 7, **R.C. 2** came home stating that he did not

like school and did not want to go back.

82.   Cummings regularly pulled **R.C. 2** by the wrist and physically placed him in "time-out".

On or about April 2, 2021, Cummings grabbed **R.C. 2** by the wrist and left bruises

consistent with finger marks on top of **R.C. 2**'s wrists. On or about April 30, 2021,

Cummings grabbed R.C. 2 by the wrist and again left bruises consistent with finger marks on top of R.C. 2's wrists.

83. Cummings' actions caused R.C. 2 physical pain. R.C. 2 demonstrated how Cummings hurt his arm to the school adjustment counselor.

84. After being placed in classroom 7, R.C. 2 became more physically aggressive.

85. On or about May 3, 2021, R.C. 2's mother reported these incidents to the Wilmington Superintendent's Office.

86. R.C. 2 has suffered severe physical and emotional distress, including feelings of anxiety.

87. Kathryn Marsh and Mark Chmiel have suffered a loss of parental consortium, causing severe emotional distress, including feelings of shame, anxiety and guilt.

A.F.

88. In September 2016, A.F. was a five-year-old boy with an autistic spectrum disorder including severe language impairment.

89. A.F. attended Wilmington Schools since 2015. He generally enjoyed school and was making progress with his disabilities and with general learning.

90. In or about September 2016 A.F. was assigned to classroom 7 at Wildwood School. Within a couple of months, A.F. became physically aggressive at home and refused to go to school.

91. Cummings failed and refused to follow A.F. IEP.

92. A.F. was sent to school every day with multiple outfits and pull-ups due to his toileting issues. Cummings failed to put a pull-up on A.F. causing him to soil his clothing. Cummings would make him wear girl's pants despite the fact that he had clean pants of his own to wear.

93.    ██A.F.██ parents removed ██R.F.██ from classroom 7 in the Summer of 2017. After he was removed, ██A.F.██ made steady progress in school.

94.    ██A.F.██ has suffered severe physical and emotional distress, including feelings of anxiety.

95.    Nicolette Doucette and Rosario Lofaro have suffered a loss of parental consortium, causing severe emotional distress, including feelings of shame, anxiety and guilt.

██C.L.██

96.    In October 2014, ██C.L.██ was a three-year-old girl with autistic spectrum disorder including severe language impairment.

97.    ██C.L.██ began pre-school in September 2014. At that time, ██C.L.██ was in a classroom where Foggerty was the teacher.

98.    Foggerty was verbally and physically abusive to ██C.L.██

99.    ██C.L.██ came home from school with marks and bruises on her body and face. On October 23, 2014 she came home with a bump on her forehead. On October 28, 2014, she came home with swollen lips. On November 13, 2014, she came home with cuts to her eye socket. On November 17, 2014, she came home with scratches on her neck. ██C.L.██'s anxiety increase dramatically during this time.

100.   In or about 2016, ██C.L.██ began kindergarten in classroom 7 at Wildwood School.

101.   Cummings was verbally and physically abusive to ██C.L.██ When ██C.L.██ became emotional or upset and began to cry, Cummings yelled at her to knock it off. Cummings used harsh language and bullied ██C.L.██

102.   At times, Cummings refused to give ██C.L.██ her lunch. ██C.L.██ would often come home from school hungry despite the fact that ██C.L.██ went to school with sufficient food.

103.   **C.L.** mother made multiple complaints to King, Legrand, Ruggiero and the School
Committee regarding Foggerty and Cummings' abusive behavior. **C.L.** mother
requested that King, Legrand and Ruggiero file complaints with DCF, but they refused.
**C.L.** mother filed her own complaint with DCF on March 30, 2018.

104.   **C.L.** parents removed **C.L.** from classroom 7 and the Wildwood School out of
concern for her safety.

105.   **C.L.** parents had to hire an attorney to force the Town Wilmington to provide **C.L.**
with an out-of-district placement.

106.   During this period of time, **C.L.** did not have a school to go to. It was an extremely
stressful and emotional time for **C.L.** and her parents.

107.   Once in the new out-of-district school, **C.L.** started to receive incredible services and
made progress in disability related issues and general learning.

108.   As a result of Foggerty and Cummings' actions, **C.L.** suffers from PTSD, panic attacks
and anxiety. **C.L.** has suffered severe physical and emotional distress, including feelings
of anxiety.

109.   Colleen Lavorato and Joseph Lavorato have suffered a loss of parental consortium,
causing severe emotional distress, including feelings of shame, anxiety and guilt.

**J.L.**

110.   In August 2005, **J.L.** was an eight-year-old boy with autistic spectrum disorder
including severe language impairment.

111.   In August 2005, **J.L.** was in a classroom at Shawsheen School and Cummings was his
primary teacher.

112.   In August 2005 Cummings put J.L. in a chair, pushed him tight up against a table and sat directly behind him. Cummings would not let J.L. move for almost an hour. Cummings grabbed J.L. under the arms several times, forcing him to sit up. During this time, J.L. was screaming. As a result of this incident, J.L. developed broken blood vessels in his eyes. An assistant teacher asked Cummings to send J.L. to the school nurse to be seen for his eyes, but Cummings refused to allow this to happen. Cummings was not truthful with J.L. parents regarding the broken blood vessels.

113.   The Town of Wilmington's school district failed to properly address this complaint with J.L. parents for over two months.

114.   J.L. parents removed J.L. from Cummings' class.

115.   J.L. has suffered severe physical and emotional distress, including feelings of anxiety.

116.   Jeanette Luti and Richard Luti have suffered a loss of parental consortium, causing severe emotional distress, including feelings of shame, anxiety and guilt.

C.B

117.   In May 2010, C.B was a five-year-old boy with autistic spectrum disorder  including severe language impairment.

118.   C.B attended Wildwood School's pre-school program from September 2007 through June 2009. During this time period, C.B enjoyed school and made great strides in his vocabulary.

119.   In September 2009, C.B started kindergarten in classroom 7. After the first week, C.B came home from school crying. He did not want to go back to school. He kept saying that his teacher was mean.

120.   Cummings would grab **C.B** in an aggressive manner. **C.B** came home from school
on multiple occasions with bruises and scratches on his face and back. He also had
bruises on his side and legs.

121.   On one occasion, **C.B** came home with a large bruise in the area of his tailbone.
**C.B** told his mother that Cummings had pushed him.

122.   **C.B** s mother reported the abuse to the schools administration, but no action  was
taken.

123.   In February 2010, **C.B** 's parents demanded that the school transfer **C.B** away from
Cummings out of concern for his safety. In March 2010, **C.B** was moved  to a
different classroom.

124.   **C.B** has suffered severe physical and emotional distress, including feelings of anxiety.

125.   Roberta Biscan has suffered a loss of parental consortium, causing severe emotional
distress, including feelings of shame, anxiety and guilt.

**G.S.**

126.   In March 2020, **G.S.** was a three-year-old boy with autistic spectrum disorder
including severe language impairment.

127.   At all times relevant hereto, **G.S.** was in a classroom where Foggerty was the teacher
and Talbot was an assistant teacher.

128.   In 2019 and 2020, Talbot physically abused **G.S.** Talbot squeezed **G.S.** s arms and
neck hard enough to cause pain to **G.S.** Talbot hurt **G.S.** when she rubbed
**G.S.** chest (similar to a sternum rub).

129.   **G.S.** mother reported her concerns to King but King failed to report the matter to
DCF or to impose any disciplinary action on Talbot.

130.  ██ G.S. ██ has suffered severe physical and emotional distress, including feelings of anxiety.

131.  Cassandra Nichols has suffered a loss of parental consortium, causing severe emotional distress, including feelings of shame, anxiety and guilt.

██ C.C. ██

132.  In October 2018, ██ C.C. ██ was a three-year-old boy with autistic spectrum disorder including severe language impairment.

133.  ██ C.C. ██ attended Wildwood School's pre-school program from October 2018 through September 2019. During this time period, ██ C.C. ██ enjoyed school.

134.  In September 2019, ██ C.C. ██ was moved to classroom 7. ██ C.C. ██ was physically and emotionally abused by Cummings.

135.  Cummings failed to prompt ██ C.C. ██ to get up and throw away his lunch. Cummings left ██ C.C. ██ sitting at a table for over thirty minutes despite the fact that ██ C.C. ██ was obviously upset.

136.  Cummings sharply pushed ██ C.C. ██ elbows off the table, while his chin was resting in his hands, causing ██ C.C. ██ chin to strike the table. Cummings yelled at ██ C.C. ██ to sit up, grabbed ██ C.C. ██ chair and sharply pushed it in. Cummings ignored ██ C.C. ██ request to use the bathroom. Cummings refused to allow ██ C.C. ██ to go to his inclusion class as was required under his individualized education plan (hereinafter "IEP"). Throughout this ordeal, ██ C.C. ██ was crying and saying he did not know what to do while Cummings ignored him for hours.

137.  The above incident was reported to King by an assistant teacher. Cummings was suspended for a few days. King did not report this incident to DCF or require any retraining.

138. In September 2020, **C.C.** was transferred to a different room with a different teacher. After this transfer, **C.C.** began making great progress with his disability issues and his education.

139. **C.C.** has suffered physical and emotional distress.

140. Erika Mellstrom and Clifton Clark, III have suffered a loss of parental consortium, causing severe emotional distress, including feelings of shame, anxiety and guilt.

**R.F.**

141. In March 2020, **R.F.** was a five-year-old girl with autistic spectrum disorder including severe language impairment.

142. **R.F.** attended Wildwood School in classroom 7.  Cummings would grab and slam **R.F.** down in a chair and then ignore **R.F.** as she cried. **R.F.** came home from school with bruising on her buttock.

143. On at least one occasion, Cummings grabbed **R.F.** took her to a chair, slammed her down in the chair and ignored her as **R.F.** screamed.

144. **R.F.** parents attempted to talk to the Superintendent about these issues, but he failed and refused to return their call.

145. **R.F.** has suffered severe physical and emotional distress, including feelings of anxiety.

146. Sabrina Fucile and Allen Fucile have  suffered a loss of parental consortium, causing severe emotional distress, including feelings of shame, anxiety and guilt.

## COUNT I - Negligence



v.

### Town of Wilmington

147. Plaintiffs reallege and incorporate herein the allegations contained in each and every other paragraph of this Complaint.

148. Defendant Town of Wilmington owed a duty to exercise reasonable care for the protection of the Plaintiffs against misconduct and inappropriate conduct and/or contact by Cummings, Foggerty and Talbot.

149. Based on the conduct described above, Defendant Town of Wilmington was aware or should have been aware of the fact that Cummings, Foggerty and Talbot were subjecting their students to physical and emotional abuse which posed safety risks to the students.

150. Based on the conduct described above, Defendant Town of Wilmington was aware or should have been aware of the fact that Fitzgerald was allowing Cummings to subject her students to physical and emotional abuse which posed safety risks to the students.

151. Defendant Town of Wilmington breached that duty by negligently failing to train, supervise, and otherwise failing to make scheduling and staffing decisions to ensure that all students were not emotionally and physically abused and received proper supervision.

152. Defendant Town of Wilmington, through its administrators and staff, including Defendants Fitzgerald, King, Legrand, Ruggiero and Brand, failed to supervise Cummings, Foggerty and Talbot in a manner to prevent and discover Cummings, Foggerty and Talbot's physical and emotional abuse.

153.    Presentment of this claim was made pursuant to Massachusetts General Laws, Chapter

        258 §4.

154.    By its actions, Defendant Town of Wilmington is the direct and proximate cause of the

        physical and emotional abuse endured by the Plaintiffs.

155.    As a direct and proximate result of the foregoing, Plaintiffs suffered and continue to

        suffer physical injury, indignity, humiliation, severe emotional distress, and mental

        anguish.

        WHEREFORE, the Plaintiffs demand judgment against Defendant Town of Wilmington

for all compensatory damages recoverable; costs and expenses allowable; and any and all other

relief as the Court deems just and proper.

### COUNT II – 42 U.S.C. §1983



**v.**

**Town of Wilmington**

156.    Plaintiffs reallege and incorporate herein the allegations contained in each and every

        other paragraph of this Complaint.

157.    Defendant Town of Wilmington acted by and through its agents.

158.    Defendant Town of Wilmington violated the Plaintiffs' rights as residents of the United

        States pursuant to 42 U.S.C. §1983 and §1988.

159.    Defendant Town of Wilmington had a duty to exercise reasonable care in the selection

        and retention of employees and to provide and ensure an educational environment for the

        Plaintiffs that was free from physical and emotional abuse and to enforce the regulations,

        rules, and laws necessary to protect the Plaintiffs and other students from acts of physical

        and emotional abuse of Cummings, Foggerty and Talbot.

160.    Defendant Town of Wilmington failed to properly train and supervise employees and/or discipline them in order to avoid physical and emotional abuse and inadequate supervision.

161.    By these failures, Defendant the Town of Wilmington adopted, approved, and/or enforced a policy, practice, and custom tolerating the violation of constitutional rights.

162.    The affirmative acts of the Defendant Town of Wilmington, including, but not limited to, its implementation of customs, practices and/or policies that resulted in a failure to properly train and supervise its employees regarding required procedures for investigating and responding to reports of abuse, were the moving force and/or direct causal link to the physical and emotional abuse suffered by the Plaintiffs and were so extreme and egregious as to shock the conscience.

163.    Defendant Town of Wilmington intentionally, willfully, and without justification deprived Plaintiffs of their rights, privileges, and immunities secured to them by the Constitution and the laws of the United States, including but not limited to, their rights to due process and to be free from physical and emotional abuse as provided by the Fourteenth Amendment of the Constitution, in violation of 42 U.S.C. §1983.

164.    As a direct and proximate result of the foregoing, Plaintiffs suffered and continue to suffer physical injury, indignity, humiliation, severe emotional distress, and mental anguish.

WHEREFORE, the Plaintiffs, demand judgment against Defendant Town of Wilmington for all compensatory damages recoverable; all punitive damages recoverable; all attorney's fees, costs and expenses allowable; and any and all other relief as the Court deems just and proper.

### COUNT III - 794 U.S.C. §504



v.
### Town of Wilmington

165.   Plaintiffs reallege and incorporate herein the allegations contained in each and every
other paragraph of this Complaint.

166.   794 U.S.C. § 504 requires recipients of federal funding to provide an appropriate
education to all qualified handicapped persons who are in the recipient's jurisdiction,
regardless of the nature or severity of the person's handicap.

167.   Defendant Town of Wilmington is a recipient of federal financial assistance, including
federal financial assistance provided to its schools, special education departments, and
Section 504 programs.

168.   Recipients of federal financial assistance must provide regular or special education and
related aids and services designed to meet the individual educational needs of disabled
persons so that the needs of disabled persons are adequately met and may not
discriminate on the basis of disability in providing these services.

169.   Pursuant to 29 U.S.C. § 794, Defendant Town of Wilmington, by and through its staff,
are required to establish and maintain procedures to ensure that children with disabilities
and their parents are guaranteed procedural safeguards with respect to the provision of
Free and Appropriate Public Education ("FAPE").

170.   Defendant Town of Wilmington, by and through its staff, grossly and substantially
departed from accepted professional judgment, practice, or standards when they did not

provide the Plaintiffs with protection from physical and emotional abuse and proper supervision.

171. Defendant Town of Wilmington, through its staff, intentionally and deliberately failed and refused to implement proper accommodations despite their obligation to do so and instead allowed Plaintiffs to be abused by Kimberly Cummings, Kelly Foggerty and Jessica Talbot.

172. Defendant Town of Wilmington, through its staff, further discriminated against Plaintiffs by treating the Plaintiffs differently than their non-disabled peers.

173. As a direct and proximate result of Defendant Town of Wilmington's deliberate and intentional actions and violations as described above, Plaintiffs were denied access to their education in violation of 794 U.S.C. § 504.

174. As a direct and proximate result of Defendant Town of Wilmington's discriminatory actions, Plaintiffs suffered physical injury, indignities, humiliation, severe emotional distress and mental anguish.

WHEREFORE, the Plaintiffs, demand judgment against Defendant Town of Wilmington for all compensatory damages recoverable; all punitive damages recoverable; all attorney's fees, costs and expenses allowable; and any and all other relief as the Court deems just and proper.

### COUNT IV - M.G.L. Chapter 93 §103



C.B , N.B. , R.C. 1 , R.C. 2 , C.L. , A.F. , J.L. G.S. , C.C. and R.F.

v.

**Town of Wilmington, Kimberly Cummings, Victoria Fitzgerald, Kelly Foggerty, Jessica Talbot, Alice Brown-Legrand, Paul Ruggiero, Charlotte King and Glenn Brand**

175. Plaintiffs reallege and incorporate herein the allegations contained in each and every other paragraph of this Complaint.

176. Each and all of the Defendants violated Plaintiffs rights as handicapped persons in the Commonwealth of Massachusetts to the full and equal benefit of all laws and proceedings for the security of persons, including, but not limited to, the rights secured under Article CXIV of the Amendments to the Constitution, and pursuant to G.L. c. 93, §103.

177. Each of the Defendants intentionally and deliberately failed and refused to implement proper accommodations despite their obligation to do so and instead allowed Plaintiffs to be physically and emotionally abused by Kimberly Cummings, Kelly Foggerty and Jessica Talbot, depriving them of the full and equal benefit of all laws and constitutional rights.

178. As a direct and proximate result of the foregoing, Plaintiffs suffered and continue to suffer physical injury, indignity, humiliation, severe emotional distress, and mental anguish.

    WHEREFORE, the Plaintiffs, demand judgment against each of the Defendants for all compensatory damages recoverable; all punitive damages recoverable; all attorney's fees, costs and expenses allowable; and any and all other relief as the Court deems just and proper.

### COUNT V - Intentional Infliction of Emotional Distress



v.

**Town of Wilmington, Kimberly Cummings, Victoria Fitzgerald, Kelly Foggerty, Jessica Talbot, Alice Brown-Legrand, Paul Ruggiero, Charlotte King and Glenn Brand**

179. Plaintiffs reallege and incorporate herein the allegations contained in each and every other paragraph of this Complaint.

180. Each and all of the Defendants intended to inflict emotional distress or, they knew or should have known that emotional distress was the likely result of their conduct, when

they physically and emotionally abused or allowed others to physically and emotionally abuse the Plaintiffs.

181. Defendants' conduct in physically and emotionally abusing or allowing others to physically and emotionally abuse disabled students in their care was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community.

182. Defendants conduct caused the Plaintiffs distress of a nature so severe that no reasonable person could be expected to endure it.

183. As a direct and proximate result of Defendants' actions, the Plaintiffs suffered physical injury, indignities, humiliation, severe emotional distress and mental anguish.

WHEREFORE, the Plaintiffs demand judgment against each Defendant for all compensatory damages recoverable; all costs and expenses allowable; and any and all other relief as the Court deems just and proper.

## COUNT VI - 42 U.S.C. §1983



v.

**Charlotte King, Alice Brown-Legrand, Paul Ruggiero and Glenn Brand**

184. Plaintiffs reallege and incorporate herein the allegations contained in each and every other paragraph of this Complaint.

185. At all material times, Defendants King, Legrand, Ruggiero and Brand had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline the Defendants Cummings, Fitzgerald, Foggerty and Talbot as well as all other employees and agents of Wildwood School.

186.   Defendants King, Legrand, Foggerty and Brand failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Cummings, Fitzgerald, Foggerty, Talbot and other employees of the Wildwood School, with deliberate indifference to the Plaintiffs' constitutional rights, which were thereby violated as described above.

187.   As supervisors, Defendants King, Legrand, Ruggiero and Brand, each permitted and failed to prevent the unconstitutional acts of Defendants Cummings, Fitzgerald, Foggerty and Talbot, individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights and serious needs of the Plaintiffs. Each of these supervising Defendants either directed his or her subordinates in conduct that violated the Plaintiffs' rights, or set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive the Plaintiffs of rights, or knew his or her subordinates were engaging in acts likely to deprive the Plaintiffs of rights and failed to act to prevent his or her subordinate from engaging in such conduct, or disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate the Plaintiffs rights, and in fact did cause the violation of the Plaintiffs rights. Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' obvious violations of the Plaintiffs' rights.

188.   The unconstitutional customs, policies, practices, and/or procedures of Defendant Town of Wilmington, stated herein, were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant Town of Wilmington, including Defendants King, Legrand, Ruggiero and Brand, with deliberate indifference to the Plaintiffs' and others' constitutional rights, which were thereby violated as described above.

189. The unconstitutional actions and/or omissions of Defendants Cummings, Fitzgerald, Foggerty and Talbot, as described above, were approved, tolerated, and/or ratified by policymaking officers for the Town of Wilmington, including Defendants King, Legrand, Ruggiero and Brand.

190. The details of the above-described incidents were revealed to Defendants King, Legrand, Ruggiero and Brand.

191. Notwithstanding this knowledge, Defendants King, Legrand, Ruggiero and Brand have approved and ratified the conduct and decisions of Defendants Cummings, Fitzgerald, Foggerty and Talbot in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them.

192. By so doing, Defendants King, Legrand, Ruggiero and Brand have shown affirmative agreement with Defendants Cummings, Fitzgerald, Foggerty and Talbot's actions and have ratified their unconstitutional acts.

193. These customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants Cummings, Fitzgerald, Foggerty and Talbot were a moving force and/or a proximate cause of the deprivations of the Plaintiffs' clearly established and well-settled constitutional rights in violation of 42 U.S.C.A. § 1983, as more fully set forth above.

194. Defendants King, Legrand, Ruggiero and Brand subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs of rights described herein, knowingly, maliciously, and with

conscious and reckless disregard for whether the rights and safety of Plaintiffs would be violated by their acts and/or omissions.

195.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants King, Legrand, Ruggiero and Brand as described above, the Plaintiffs sustained serious and permanent injuries and are entitled to damages, penalties, costs, and attorneys' fees.

196.   As a direct and proximate result of the foregoing, the Plaintiffs suffered and continue to suffer physical injury, indignity, humiliation, severe emotional distress, and mental anguish.

   WHEREFORE, the Plaintiffs, demand judgment against Defendants Charlotte King, Alice Brown-Legrand, Paul Ruggiero and Glenn Brand for all compensatory damages recoverable; all punitive damages recoverable; all attorney's fees, costs and expenses allowable; and any and all other relief as the Court deems just and proper.

### COUNT VII - 42 U.S.C. § 1983



**v.**
**Kimberly Cummings**

197.   Plaintiffs reallege and incorporate herein the allegations contained in each and every other paragraph of this Complaint.

198.   Defendant Cummings, while acting under color of law, physically and emotionally abused the Plaintiffs and thereby violated their clearly established rights under the Fourteenth Amendments to the United States Constitution.

199.   Defendant Cummings acted with reckless disregard for Plaintiffs' constitutional rights.

200.   As a direct and proximate result of Defendant Cummings discriminatory actions, the

Plaintiffs suffered physical injury, indignities, humiliation, severe emotional distress and

mental anguish.

WHEREFORE, the Plaintiffs, demand judgment against Defendant Kimberly Cummings
for all compensatory damages recoverable; all punitive damages recoverable; all attorney's fees,
costs and expenses allowable; and any and all other relief as the Court deems just and proper.

### COUNT VIII - Assault and Battery



**Kimberly Cummings**

201.   Plaintiffs reallege and incorporate herein the allegations contained in each and every

other paragraph of this Complaint.

202.   Defendant Cummings committed the tort of assault and battery against the Plaintiffs by

assaulting and battering them without legal justification, cause, excuse, or privilege.

203.   As a direct and proximate result of Defendant Cummings' actions, Plaintiffs suffered

physical injury, indignities, humiliation, severe emotional distress and mental anguish.

WHEREFORE, the Plaintiffs demand judgment against Defendant Kimberly Cummings
for all compensatory damages recoverable; all attorney's fees, costs and expenses allowable; and
any and all other relief as the Court deems just and proper.

### COUNT IX - Massachusetts Civil Rights Act, M.G.L. c. 12 § 11I



**Kimberly Cummings**

204.   Each of the foregoing paragraphs is incorporated as if fully set forth herein.

205.   By means of use of threats, intimidation and coercion, defendant Cummings violated the

civil rights of the Plaintiffs under the laws of the Commonwealth of Massachusetts.

206.    As a direct and proximate result of Defendant Cummings' actions, Plaintiffs suffered

physical injury, indignities, humiliation, severe emotional distress and mental anguish.

WHEREFORE, the Plaintiffs, demand judgment against Defendant Kimberly Cummings
for all compensatory damages recoverable; all punitive damages recoverable; all attorney's fees,
costs and expenses allowable; and any and all other relief as the Court deems just and proper.

### COUNT X - 42 U.S.C. § 1983



v.
**Victoria Fitzgerald**

207.    Plaintiffs reallege and incorporate herein the allegations contained in each and every

other paragraph of this Complaint.

208.    Defendant Fitzgerald, while acting under color of law, stood by and allowed Defendant

Cummings to physically and emotionally abuse the Plaintiffs and thereby violated their

clearly established rights under the Fourteenth Amendment to the United States

Constitution.

209.    Defendant Fitzgerald acted with reckless disregard for the Plaintiffs' constitutional rights.

210.    As a direct and proximate result of the foregoing, Plaintiffs suffered and continue to

suffer physical injury, indignity, humiliation, severe emotional distress, and mental

anguish.

WHEREFORE, the Plaintiffs, demand judgment against Defendant Victoria Fitzgerald
for all compensatory damages recoverable; all punitive damages recoverable; all attorney's fees,
costs and expenses allowable; and any and all other relief as the Court deems just and proper.

## COUNT XI - 42 U.S.C. § 1983

### ███████ G.S. ███████ v. Jessica Talbot

211.  Plaintiffs reallege and incorporate herein the allegations contained in each and every other paragraph of this Complaint.

212.  Defendant Talbot, while acting under color of law, physically and emotional abused the Plaintiff and thereby violated his clearly established rights under the Fourteenth Amendments to the United States Constitution.

213.  Defendant Talbot acted with reckless disregard for Plaintiff's constitutional rights.

214.  As a direct and proximate result of Defendant Talbot's discriminatory actions, the Plaintiff suffered physical injury, indignity, humiliation, severe emotional distress and mental anguish.

WHEREFORE, the Plaintiff, demands judgment against Defendant Jessica Talbot for all compensatory damages recoverable; all punitive damages recoverable; all attorney's fees, costs and expenses allowable; and any and all other relief as the Court deems just and proper.

## COUNT XII - Assault and Battery

### ███████ G.S. ███████ v. Jessica Talbot

215.  Plaintiffs reallege and incorporate herein the allegations contained in each and every other paragraph of this Complaint.

216.  Defendant Talbot committed the tort of assault and battery against the Plaintiff by assaulting and battering him without legal justification, cause, excuse, or privilege.

217.  As a direct and proximate result of Defendant Talbot's actions, Plaintiff suffered physical injury, indignities, humiliation, severe emotional distress and mental anguish.

WHEREFORE, the Plaintiff, demands judgment against Defendant Jessica Talbot for all compensatory damages recoverable; all attorney's fees, costs and expenses allowable; and any and all other relief as the Court deems just and proper.

## COUNT XIII - Massachusetts Civil Rights Act, M.G.L. c. 12 § 11I
### G.S. v. Jessica Talbot

218.   Plaintiffs reallege and incorporate herein the allegations contained in each and every other paragraph of this Complaint.

219.   By means of use of threats, intimidation and coercion, defendant Talbot violated the civil rights of the Plaintiff under the laws of the Commonwealth of Massachusetts.

220.   As a direct and proximate result of Defendant Talbot's actions, Plaintiff suffered physical injury, indignities, humiliation, severe emotional distress and mental anguish.

WHEREFORE, the Plaintiff, demands judgment against Defendant Jessica Talbot for all compensatory damages recoverable; all punitive damages recoverable; all attorney's fees, costs and expenses allowable; and any and all other relief as the Court deems just and proper.

## COUNT XIV - 42 U.S.C. § 1983
### C.L. v. Kelly Foggerty

221.   Plaintiffs reallege and incorporate herein the allegations contained in each and every other paragraph of this Complaint.

222.   Defendant Foggerty, while acting under color of law, physically and emotional abused the Plaintiff and thereby violated her clearly established rights under the Fourteenth Amendments to the United States Constitution.

223.   Defendant Foggerty acted with reckless disregard for Plaintiff's constitutional rights.

224.   As a direct and proximate result of Defendant Foggerty's discriminatory actions, the Plaintiff suffered physical injury, indignity, humiliation, severe emotional distress and mental anguish.

WHEREFORE, the Plaintiff, demands judgment against Defendant Foggerty for all compensatory damages recoverable; all punitive damages recoverable; all attorney's fees, costs and expenses allowable; and any and all other relief as the Court deems just and proper.

## COUNT XV - Assault and Battery

### ████ C.L. ████ v. Kelly Foggerty

225.    Plaintiffs reallege and incorporate herein the allegations contained in each and every other paragraph of this Complaint.

226.    Defendant Foggerty committed the tort of assault and battery against the Plaintiff by assaulting and battering her without legal justification, cause, excuse, or privilege.

227.    As a direct and proximate result of Defendant Foggerty's actions, Plaintiff suffered physical injury, indignities, humiliation, severe emotional distress and mental anguish.

WHEREFORE, the Plaintiff, demands judgment against Defendant Kelly Foggerty for all compensatory damages recoverable; all attorney's fees, costs and expenses allowable; and any and all other relief as the Court deems just and proper.

## COUNT XVI - Massachusetts Civil Rights Act, M.G.L. c. 12 § 11I

### ████ C.L. ████ v. Kelly Foggerty

228.    Plaintiffs reallege and incorporate herein the allegations contained in each and every other paragraph of this Complaint.

229.    By means of use of threats, intimidation and coercion, defendant Kelly Foggerty violated the civil rights of the Plaintiff under the laws of the Commonwealth of Massachusetts.

230.    As a direct and proximate result of Defendant Kelly Foggerty's actions, Plaintiff suffered physical injury, indignities, humiliation, severe emotional distress and mental anguish.

WHEREFORE, the Plaintiff, demands judgment against Defendant Kelly Foggerty for all compensatory damages recoverable; all punitive damages recoverable; all attorney's fees, costs and expenses allowable; and any and all other relief as the Court deems just and proper.

## COUNT XVII - Loss of Consortium under M.G.L. c. 231, § 85X

**Roberta Biscan, Jennifer Baptista, Aaron Baptista, Sabrina Veloza, Kathryn Marsh, Mark Chmiel, Colleen Lavorato, Joseph Lavorato, Nicolette Doucette, Rosario Lofaro, Jeannette Luti, Richard Luti, Cassandra Nichols, Erika Mellstrom, Clifton Clark, III, Sabrina Fucile and Allen Fucile**

v.

**Town of Wilmington, Kimberly Cummings, Victoria Fitzgerald, Kelly Foggerty, Jessica Talbot, Alice Brown-Legrand, Paul Ruggiero, Charlotte King and Glenn Brand**

231. Plaintiffs reallege and incorporate herein the allegations contained in each and every other paragraph of this Complaint.

232. Plaintiff Roberta Biscan is  the parent of ████ **C.B** ████, an intellectually disabled child who is totally dependent on his parent for support.

233. Plaintiffs Jennifer Baptista and Aaron Baptista are the parents of ████ **N.B.** ████, an intellectually disabled child who is totally dependent on his parents for support.

234. Plaintiff Sabrina Veloza is the parent of ████ **R.C. 1** ████, an intellectually disabled child who is totally dependent on his parent for support.

235. Kathryn Marsh and Mark Chmiel are the parents of ████ **R.C. 2** ████, an intellectually disabled child who is totally dependent on his parents for support.

236. Plaintiffs Colleen Lavorato and Joseph Lavorato are the parents of ████ **C.L.** ████, an intellectually disabled child who is totally dependent on her parents for support.

237. Plaintiffs Nicolette Doucette and Rosario Lofaro are the parents of ████ **A.F.** ████, an intellectually disabled child who is totally dependent on his parents for support.

238. Plaintiffs Jeannette Luti and Richard Luti are the parents of ████ **J.L.** ████, an intellectually disabled child who is totally dependent on his parents for support.

239. Plaintiff Cassandra Nichols is the parent of ████ **G.S.** ████, an intellectually disabled child who is totally dependent on his parent for support.

240.    Plaintiffs Erika Mellstrom and Clifton Clark, III are the parents of ███ C.C. ███ an

intellectually disabled child who is totally dependent on his parents for support.

241.    Plaintiffs Sabrina Fucile and Allen Fucile are the parents of ███ R.F. ███, an

intellectually disabled child who is totally dependent on his parents for support.

242.    In accordance with M.G.L. c. 231, § 85X, Plaintiffs each have a cause of action for loss

of consortium of their child, against each of the Defendants who are responsible for

causing their injury.

WHEREFORE, the Plaintiffs, demand judgment against each of the Defendants for all
compensatory damages recoverable; all punitive damages recoverable; all attorney's fees, costs
and expenses allowable; and any and all other relief as the Court deems just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL CLAIMS**.

Plaintiffs,
By their attorney

/s/ Richard M. Welsh, Jr._____
Richard M. Welsh, Jr., Esq., BBO# 552732
LAW OFFICE OF HOWARD M. KAHALAS
6 Beacon Street, Suite 1020
Boston, Massachusetts 02108
(617) 523-1155
rwelsh@kahalaslaw.com

March 23, 2023