**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| ───────────────────── ) | |
| Roberta Biscan, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. |
| v. ) | 23—11170-NMG |
| ) | |
| Town of Wilmington, et al., ) | |
| ) | |
| Defendants. ) | |
| ───────────────────── ) | |

**MEMORANDUM & ORDER**

GORTON, J.

This action arises out of a series of incidents during which several disabled students were allegedly abused, physically and mentally, while attending Wilmington, Massachusetts public schools.  The complaint, which was filed by a group of affected parents on behalf of themselves ("parent-plaintiffs") and their children ("student-plaintiffs") (collectively, "the plaintiffs"), seeks relief from the Town of Wilmington ("the Town" or "Wilmington"), school officials: Alice Brown-Legrand, Paul Ruggiero, Charlotte King and Glenn Brand (collectively, "the school officials"), teachers: Kimberly Cummings ("Cummings") and Kelly Fogarty, and assistant teachers: Jessica Talbot ("Talbot") and Victoria Fitzgerald ("Fitzgerald")

-1-

(collectively, "the defendants").[1]  The complaint initially included 17 counts and seeks relief on various constitutional, federal and common law grounds.

Pending motions to dismiss were filed by: 1) the Town of Wilmington and the school officials (Docket No. 17), 2) Fitzgerald (Docket No. 20), 3) Talbot (Docket No. 29) and 4) Cummings (Docket No. 32).  The Court will consider those motions and Cummings's motion for oral argument (Docket No. 34) together.  Defendant Kelly Fogarty (who was mis-identified in the complaint as "Kelly Foggerty"), was dismissed from the case with prejudice by joint stipulation (Docket No. 39). Accordingly, the Court will not address Counts XIV-XVI, because Fogarty was the only defendant named in those counts, nor Count IV, which plaintiffs agree should be dismissed in its entirety.

The complaint does not specify whether the teachers and school officials are sued in their personal or official capacities.  After reviewing the nature of plaintiffs' claims, the damages requested and the nature of the defenses raised, including the defense of qualified immunity by some defendants, the Court concludes that plaintiffs intended to hold the

---

[1] Alice Brown-Legrand served as the Director of Special Education for the Town; Charlotte King served as the Principal at Wildwood School, one of two schools implicated in the complaint; Glenn Brand served as the Superintendent for the public school system of Wilmington; and Paul Ruggiero was the interim Superintendent at some unspecified point of time.

individual defendants personally liable. See Powell v. Alexander, 391 F.3d 1, 22-23 (1st Cir. 2004); see also Hourihan v. Bitinas, 2018 WL 10246994, at *3 (D. Mass. June 27, 2018) ("Given that [p]laintiff has brought a separate count specifically against the Town and did not object to defendant officers' implied assumption that they were being sued in their individual capacities, the Court construes the complaint as asserting claims against the officers in their individual capacities only."), aff'd, 811 F. App'x 11 (1st Cir. 2020).

## I.   **Background**

### A. Facts

The essence of the complaint is that, during a 17-year period between 2005 and 2021, Cummings intermittently abused disabled students physically and emotionally in her pre-kindergarten or kindergarten classes.  Fitzgerald, who served as an assistant teacher in Cummings's class from February, 2017, to March, 2021, purportedly failed to intervene or report Cummings's abuse to the Massachusetts Department of Children & Families ("DCF").  Talbot, meanwhile, purportedly physically abused one student between 2019 and 2020.  The Wilmington School District ("the School District") and school officials are said to have failed to train, supervise or terminate the allegedly abusive teachers, despite receiving reports of abuse by staff

members and parents.[2]  The complaint as to each defendant is discussed seriatim.

**1. Cummings**

Cummings served as a teacher at the Wildwood and Shawsheen Schools in Wilmington between 2003 and 2021.  According to the complaint, she was terminated after the commencement of a DCF investigation in May, 2021.

Her purported misconduct began in 2005 with an incident involving an eight-year-old boy with autistic spectrum disorder identified as "J.L."[3]  According to the complaint, while serving as his teacher, Cummings "put J.L. in a chair, pushed him tight up against a table and sat directly behind him" for almost one hour.  J.L. screamed throughout the incident, and allegedly suffered broken blood vessels in his eyes as a result.  An assistant teacher attempted to send J.L. to the school nurse, but Cummings countermanded.  The School District did not address the complaint of J.L.'s parents for more than two months, whereupon they removed him from Cummings's class.  He allegedly suffered severe physical and emotional distress.

---

[2] According to the Town's motion to dismiss, the Wilmington School Committee is the final policymaker with respect to the Wilmington School District.
[3] In the complaint, all students are identified by pseudonym (their initials), due to their ages and/or disability status.

Between 2008 and 2013, Cummings purportedly had "inappropriate and potentially harmful physical interactions" with her students, including using her foot to move non-verbal students, forcefully handling students and pulling them up by their underarms.  In one case, during the 2009-10 school year, student "C.B." repeatedly came home from class with bruises and scratches on his face and back and told his parents his teacher was mean.  On another occasion, C.B. came home with a large bruise around his tailbone and told his mother that Cummings had pushed him.  The complaint alleges that the School District ignored the reports of C.B.'s parents and removed C.B. from her classroom only after the parents' demand.

The bulk of the allegations derive from Cummings's conduct between 2016 and 2021, during which time she allegedly "was physically and verbally abusive to N.B., R.C.1, R.C.2, C.L., A.F., and C.C., R.F."[4]  The complaint alleges, inter alia, that Cummings "slammed" one student into her chair, verbally abused and refused to let another student eat her lunch, and refused to put a "pull-up" on another child who she knew had toileting issues.

---

[4] A.F. is referred to as "A.F." in the complaint and some pleadings but as "A.L." in others.

In 2020, the School District allegedly suspended Cummings "for incompetency, conduct unbecoming a teacher and other just cause" following an incident in which she pushed a pre-kindergarten student's elbow off a table, denied the child water and refused to implement his individualized education plan.

In February, 2021, after Cummings was accused of dragging N.B. by his wrists, N.B.'s pediatrician filed a complaint with DCF.  In May, 2021, Cummings purportedly injured N.B., a six-year-old boy with autistic spectrum disorder, resulting in a three-and-a-half-inch bruise on his lower back.  It is alleged that N.B. would often say, "no school, teacher hurt me," and would refuse to enter Mr. Cummings's classroom when delivered by his parents.

The complaint alleges that Cummings's employment was terminated in May, 2021 after DCF commenced an investigation.

**2. Fitzgerald**

According to the complaint, Fitzgerald served as an assistant teacher in Cummings's classroom at the Wildwood School from February, 2017, to May, 2021.  Similarly, her employment was terminated after the DCF commenced its investigation.

The complaint does not allege that Fitzgerald physically or verbally abused any of the students herself.  Instead, Fitzgerald purportedly "observed Cummings commit" a series of

abuses while they taught together and "failed to take any action to stop the abuse" or report any of the abuse to DCF as required by law.

### 3. Talbot

According to the complaint, Talbot served as an assistant teacher to Fogarty at the Wildwood School in Wilmington at unspecified times. The single allegation of misconduct against Talbot is that, in 2019 and 2020, she physically squeezed G.S.'s arms and neck hard enough to cause pain and rubbed G.S.'s chest (similar to a sternum rub). G.S.'s mother purportedly reported the incident but no action was taken.

### 4. Wilmington and School Officials

The complaint does not include allegations that any other school official personally perpetuated any physical or verbal abuse. Instead, plaintiffs allege that school staff members and parents repeatedly reported their concerns about Cummings and Talbot but that school officials on behalf of the School District failed to intervene, discipline the teachers or otherwise act on the reports. Cummings and Talbot retained their teaching positions.

## B. Procedural History

Plaintiffs initially filed a 17-count complaint in Middlesex Superior Court in March, 2023.  Defendants removed the action to federal court in May, 2023.

Since that time, three counts have been dismissed in their entirety, certain counts have been dismissed against specific defendants and one defendant has been dismissed entirely. Specifically, as noted above, all counts against Fogarty were dismissed by joint stipulation pursuant to Fed R. Civ. P. 41(a)(1)(A)(ii).  Plaintiffs C.B., J.L., A.F., C.L. and C.C. agreed to dismiss Count I against the Town.  Plaintiffs dismissed Count III against the school officials, Count IV against the school officials and the Town, Count V against the Town and Count X against Fitzgerald with respect to students C.B., J.L. and G.S.

All four pending motions to dismiss seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

## II.  <u>Legal Standard</u>

To survive a motion to dismiss, a claim must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may only look to the facts

alleged in the pleadings, documents attached as exhibits or incorporated by reference and matters of which judicial notice can be taken. Nollet v. Justices of Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000).

Furthermore, the Court must accept all factual allegations in the claim as true and draw all reasonable inferences in the claimant's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). If the facts in the claim are sufficient to state a cause of action, a motion to dismiss will be denied. See Nollet, 83 F. Supp. 2d at 208. That standard is

> intended to screen out claims in which the factual
> allegations of the complaint are too scanty or too
> vague to render the claims plausible.

Ríos-Campbell v. U.S. Dep't of Com., 927 F.3d 21, 25 (1st Cir. 2019).

Although a court must accept as true all the factual allegations in a claim, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). Threadbare recitals of legal elements which are supported by mere conclusory statements do not suffice to state a cause of action. Id.

**III. <u>Application</u>**

The Court will consider each count sequentially.

## A. Count I (Negligence, Town of Wilmington)

Student-plaintiffs N.B., R.C.1, R.C.2, G.S. and R.F. bring a common negligence claim against the Town.  They allege that it owed a duty of reasonable care to the student-plaintiffs and should have protected them from the misconduct of Cummings and Talbot.[5]  Specifically, the Town purportedly breached its duty by negligently failing to train and supervise Cummings and Talbot and by continuing to employ them after reports of misconduct were received.

In its motion to dismiss, Wilmington insists that those negligence claims are barred by Section 10(j) of the Massachusetts Tort Claims Act, M.G.L. c. 258, §§ 1 et seq. ("Section 10(j)" of the "MTCA").

Section 10(j) "provide[s] some substantial measure of immunity from tort liability to government employers." Brum v. Town of Dartmouth, 428 Mass. 684, 695 (1999).  Under the statute, municipalities cannot be held liable "except where the condition or situation was originally caused by the public employer." Id. at 692 (internal quotation marks omitted).  The Town contends that the student-plaintiffs failed to allege that the Town itself was the original cause of any misconduct and

---

[5] The complaint also initially alleged the Town failed to protect the plaintiffs from misconduct and inappropriate conduct by Fogarty but all claims against her have been dismissed.

therefore its failure to act cannot be the "original cause" of the condition or situation. See Kent v. Commonwealth, 437 Mass. 312, 317 (2002).  The statute requires some affirmative act by the municipality. Id.

The complaint does not allege that Wilmington took any affirmative act that was the "original cause" of the alleged torts.  Section 10(j) does, however, contain an exception which allows a plaintiff to recover

> any claim based upon explicit and specific assurances
> of safety or assistance, beyond general
> representations that investigation or assistance will
> be or has been undertaken . . . provided that the
> injury resulted in part from reliance on those
> assurances.

Mass. Gen. Laws ch. 258, § 10(j)(1) (emphasis added).

In the context of Section 10(j)(i), the Supreme Judicial Court ("SJC") has explained that "explicit" means "a spoken or written assurance [rather than] one implied from the conduct of the parties or the situation." Lawrence v. City of Cambridge, 422 Mass. 406, 410 (1996).  To be "specific," the terms of the assurance must be "definite, fixed, and free from ambiguity." Id.

That exception does not apply in this case.  The complaint does not suggest that Wilmington made any spoken, written or

otherwise specific assurance that the alleged misconduct of Cummings or Talbot would be addressed.

Accordingly, Count I of plaintiff's complaint against the Town will be dismissed as barred under Section 10(j) of the MTCA.[6]

**B. Count II (Section 1983, Wilmington)**

The complaint alleges that the Town violated the plaintiffs' rights pursuant to 42 U.S.C. § 1983 ("§ 1983") and § 1988. According to the complaint, Wilmington adopted, approved and enforced a policy, practice and custom tolerating the violation of constitutional rights. That policy purportedly resulted in a failure of the Town to train and supervise its employees properly with respect to investigating and responding to reports of teacher misconduct.

**1. Standard**

It is well established that "[a] municipality cannot be held liable solely because it employs a tortfeasor. . . ." Monell v. Dept. of Soc. Servs. of the City of N.Y., 436 U.S. 658, 691 (1978). A plaintiff can bring a § 1983 claim against a municipality only if she sufficiently pleads "the existence of

---

[6] The Town also asserts that the negligence claims of C.B., J.L., C.C., C.L. and A.F. are time-barred but, because the Court disposes of those claims under Section 10(j), it declines to consider the Town's statute of limitations argument.

an official municipal policy or custom condoning the alleged constitutional violation." Oullette v. Beaupre, 977 F.3d 127, 140 (1st Cir. 2020) (citation omitted).  The municipal custom must be so well settled that municipal officials "can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989).  A plaintiff must also show that "the custom [was] the cause of and the moving force behind the deprivation of constitutional rights." Id.

The failure of a municipality to train employees may result in liability under § 1983 when it amounts

> to deliberate indifference to the rights of persons
> with whom the untrained employees come into contact.

Connick v. Thompson, 563 U.S. 51, 61 (2011) (cleaned up). Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." Id. (citation omitted). "A showing of simple or even heightened negligence will not suffice." Bd. of Comm'rs v. Brown, 520 U.S. 397, 407 (1997).

**2. Application**

The complaint contains three broad allegations involving the School District: that it

-13-

> 1) failed to address the parents' complaint for over
> two months after the alleged physical abuse by
> Cummings of J.L. in 2005;
>
> 2) failed to report the alleged abuse to the DCF after
> its own internal investigation; and
>
> 3) failed to take any action even after school
> employees reported the alleged abuse.

The complaint sheds no light on when the School District became aware of reports of misconduct or what form those reports took.  It does not specify which specific incidents of alleged abuse were reported or explain who at "the school district" received such reports. Moreover, plaintiffs allege that the Town failed properly to train its officers and employees but provides no detail whatsoever about what kind of training the Town did offer or should have offered.

Given its sparsity, the complaint does not plausibly allege that the Town of Wilmington had an official municipal policy, custom or practice that condoned any constitutional violation. See Monell, 436 at 691; see also DiRico v. City of Quincy, 404 F.3d 464, 469 (1st Cir. 2005).  The complaint's factual allegations are too broad and conclusory to survive a motion to dismiss. See Ali Abdisamad v. City of Lewiston, 960 F.3d 56, 60 (1st Cir. 2020) (complaint's factual allegations were insufficient under Monell because they "include no facts

whatsoever about a [] policy that would be unconstitutional and create municipal liability").

In summary, <u>Monell</u>'s "stringent standard of fault" cannot be met with such barebone factual allegations.   Count II will be dismissed.

### C. Count III (Rehabilitation Act, Wilmington)

Plaintiffs allege that the Town intentionally and deliberately failed and refused to implement proper accommodations for disabled student-plaintiffs despite their obligation to do so and permitted the student-plaintiffs to be abused by Cummings and Talbot.  In so doing, the Town purportedly discriminated against plaintiffs by treating them differently than their non-disabled peers.[7]

Count III states a claim under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"), which provides that no disabled person shall be discriminated against "solely by reason of her or his disability."  Specifically, Section 504 provides that

> [n]o otherwise qualified individual with a disability
> . . . shall, solely by reason of her or his
> disability, be excluded from the participation in, be
> denied the benefits of, or be subjected to

---

[7] Plaintiffs initially filed Count III against both the Town and the school officials but dismissed their claims against the school officials pursuant to a joint stipulation.

discrimination under any program or activity receiving
Federal financial assistance . . . .

29 U.S.C. § 794(a).[8]

An alleged violation of the Rehabilitation Act requires a
showing of four elements: (1) the plaintiff is disabled; (2) the
plaintiff sought services from a federally funded entity; (3)
the plaintiff was "otherwise qualified" to receive those
services; and (4) the plaintiff was denied those services
"solely by reason of her . . . disability." See Lesley v. Hee
Man Chie, 250 F.3d 47, 52- 53 (1st Cir. 2001).

The Town does not dispute that plaintiffs satisfy the first
three elements of Section 504.  It avers only that plaintiffs
did not sufficiently allege that the Town discriminated against
the plaintiffs "solely by reason of [their] disability."

The Court agrees.  The complaint fails adequately to plead
the existence of any discriminatory intent. See Leary v. Dalton,
58 F.3d 748, 753 (1st Cir. 1995) (explaining plaintiff must
plead facts that "show at a minimum that his disability was a
reason -- if not the sole reason -- for" action taken).  The
complaint's conclusory allegation that the Town discriminated
against plaintiffs by treating them differently than their non-

---

[8] In their complaint, plaintiffs cite "794 U.S.C. § 504," which does not
exist.  The Court presumes plaintiffs intended to cite 29 U.S.C. § 794.

disabled peers, with no other facts to support that assertion, is insufficient.  Based on the complaint's scant facts, it cannot be inferred that the Town failed to intervene solely because of the students' disability status. See Falmouth Sch. Dep't v. Doe, 44 F.4th 23, 46-47 (1st Cir. 2022) (affirming district court determination that complaint failed to plead claim under Section 504 adequately where "nothing in the record . . . would support an inference of retaliatory animus or disability-based animus").  Count III will be dismissed.

### D. Count V (IIED)

Count V is a claim for intentional infliction of emotional distress ("IIED") against the school officials, Fitzgerald, Talbot and Cummings.[9]  Plaintiffs allege that defendants physically or emotionally abused the student-plaintiffs in their care or allowed others to abuse them.

#### 1. Standard

Under Massachusetts law, to establish intentional infliction of emotional distress, a plaintiff must show that

> (1) [] the actor intended to inflict emotional distress or that [the actor] knew or should have known that emotional distress was the likely result of [the actor's] conduct . . .;

---

[9] Plaintiffs dismissed Count V against the Town.

(2) [] the conduct was "extreme and outrageous, beyond all possible bounds of decency, [and] was utterly intolerable in a civilized community,";

(3) [the actor's conduct was a] cause of the plaintiff's emotional distress . . .; [and]

(4) [] the emotional distress sustained by the plaintiff was "severe" and of a nature "that no reasonable [person] could be expected to endure."

Armstrong v. Lamy, 938 F. Supp. 1018, 1049 (D. Mass. 1996) (quoting Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (Mass. 1976)).

The second element makes this an especially stringent standard.  A court may grant a motion to dismiss where the conduct alleged cannot be deemed utterly intolerable in a civilized community. Polay v. McMahon, 468 Mass. 379, 386 (2014).

### 2. School Officials

Even if accepted as true, the alleged failure by school officials to act does not rise to the level of severe and outrageous conduct required for an IIED claim. See Doe v. Bradshaw, 2013 WL 5236110, at *13 (D. Mass. Sept. 16, 2013) (finding even deliberate indifference toward a student's rights does not mean the defendants' actions were "extreme and outrageous" or "beyond all possible bounds of decency"); Ahern v. Sig Sauer, Inc., 2021 WL 5811795, at *4 (D. Mass. Dec. 7,

-18-

2021) (no IIED claim because no allegation of a failure to act "directed at [plaintiff] and intended to cause [plaintiff] emotional distress").  Plaintiffs' IIED claim against the school officials will be dismissed.

### 3. Fitzgerald

Similar to the school officials, Fitzgerald's purported misconduct arises from her failure to intervene rather than her own conduct.  Her failure to act, even if true, does not rise to the level of extreme and outrageous behavior required by the statute. Id.  The complaint's broad assertion that Fitzgerald was present but failed to report all abuse does not allege sufficient tortious intent toward the students. See Polay, 468 Mass. at 388; Gable v. Borges Construction, Inc., 792 F. Supp. 2d 117, 126 (D. Mass. 2011) (dismissing IIED claim where complaint did not allege tortious intent toward plaintiff).  Moreover, plaintiffs do not properly allege that Fitzgerald's failure to intervene caused them emotional distress so severe that no reasonable person could be expected to endure it. See Polay, 468 Mass. at 388.  Plaintiffs' IIED claim against Fitzgerald will be dismissed.

### 4. Talbot

Even if accepted as true, the single allegation against Talbot, although troubling, cannot support an IIED claim.

Again, "[t]he standard for making a claim of intentional infliction of emotional distress is very high," <u>Galvin</u> v. <u>U.S. Bank, N.A.</u>, 852 F.3d 146, 161 (1st Cir. 2017) (citation omitted), and a motion to dismiss may be granted when the conduct alleged does not meet that standard. <u>Id.</u>  G.S.'s single allegation, which consists of a single two-sentence paragraph, does not allege conduct that goes "beyond all bounds of decency and [is] utterly intolerable in a civilized community." <u>Agis</u>, 371 Mass. at 145.  It does not, for example, suggest Talbot harbored any tortious intent toward G.S. <u>See</u> <u>Gable</u>, 792 F. Supp. 2d at 126.

In addition, G.S. does not allege facts that suggest he suffered emotional distress so severe that no reasonable person could be expected to endure it.  His broad assertion that he "suffered severe physical and emotional distress, including feelings of anxiety" does not suffice. <u>See</u> <u>Polay</u>, 468 Mass. at 388. G.S.'s IIED claim will be dismissed.

### 5. Cummings

Student-plaintiffs' IIED claim against Cummings is a different proposition given the repeated nature of the alleged conduct.

> Repeated harassment . . . may compound the
> outrageousness of incidents which, taken individually,

> might not be sufficiently extreme to warrant liability
> for infliction of emotional distress.

Sindi v. El-Moslimany, 896 F.3d 1, 21 (1st Cir. 2018) (quoting

Boyle v. Wenk, 378 Mass. 592, 595 (Mass. 1979)).  The complaint

alleges a pattern of physical and emotional harassment at the

hands of Cummings that persisted for 17 years in the classroom.

Plaintiffs claim that, although Cummings attended trainings and

received multiple disciplinary suspensions, her conduct

continued.  As a teacher of especially young and disabled

students, Cummings was responsible for particularly vulnerable

children.  If the allegations are true and proven, at least some

of her conduct was utterly intolerable in a civilized community.

For all student-plaintiffs except G.S., it is plausible

that a jury could determine that Cummings intended to cause

student-plaintiffs emotional distress and her acts constituted

extreme and outrageous conduct.[10]  Student-plaintiffs therefore

have stated the first and second elements of a claim for IIED.

Cummings doubts whether plaintiffs can meet the fourth

element, which requires them to establish that they suffered

distress so "severe [that] no reasonable [person] could be

expected to endure" it. Armstrong, 938 F. Supp. at 1049 (quoting

---

[10] The complaint does not suggest that G.S. and Cummings had any interaction and all of G.S.'s claims against Cummings will be dismissed.

<u>Agis</u>, 371 Mass. at 144-145)).  She is correct that the complaint at times describes the students' distress in a conclusory fashion which is insufficient but some student-plaintiffs do ultimately allege that their distress is severe and ongoing. Accordingly, the Court must determine which student-plaintiffs have sufficiently pled facts to support IIED claims against Cummings.

N.B. and C.L. sufficiently pled the third and fourth elements of a claim for IIED.  According to the complaint, N.B. continues to undergo trauma therapy following Cummings's abuse, and

> had increased staring spells, had increased emotional
> lability, had agitated behaviors, and had sleep
> difficulties and nightmares

because of Cummings's conduct.  C.L. similarly contends that she suffers from post-traumatic stress disorder, panic attacks and anxiety.

In comparison, J.L., C.B., R.F., A.F. and C.C. all allege that they "suffered severe physical and emotional distress, including feelings of anxiety" but provide insufficient description of their distress.  Their claims, which simply amount to little more than "a recitation of the element of severe emotional distress," <u>Polay</u>, 468 Mass. at 388, will be dismissed.

The claims of R.C.1. and R.C.2 will also be dismissed. R.C.1. purportedly regressed "in many of his disability related issues" following the alleged conduct.  Even if accepted as true, that broad claim does not satisfy the high bar for proof of severity. See Sindi, 896 F.3d at 22.  The acknowledgment in the complaint that "R.C.1's regressions ceased" after he was removed from Cummings's classroom also undermines the alleged severity of the distress.  R.C.2, meanwhile, purportedly "became more physically aggressive" after joining Cummings' class, in addition to experiencing "severe physical and emotional distress."  R.C.2 does not plausibly allege that his distress was so severe that no reasonable person could be expected to endure it.

In conclusion, N.B. and C.L. may proceed with their IIED claims against Cummings.  The other IIED claims will be dismissed.

### E. Count VI (Section 1983, School Officials)

Student-plaintiffs allege that the school officials failed properly to hire, train, supervise and discipline Cummings, Fitzgerald and Talbot, and that they acted with deliberate indifference toward plaintiffs' constitutional rights.

#### 1. Standard

Under § 1983, a supervisor may be liable if

-23-

> (1) the behavior of his subordinates results in a
> constitutional violation, and (2) the supervisor's
> action or inaction was affirmatively linked to that
> behavior in the sense that it could be characterized
> as supervisory encouragement, condonation or
> acquiescence or gross negligence amounting to
> deliberate indifference.

Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008) (cleaned up).

To demonstrate deliberate indifference, plaintiffs must

establish

> (1) a grave risk of harm, (2) the [defendants'] actual
> or constructive knowledge of that risk, and (3) the
> [defendants'] failure to take easily available
> measures to address that risk.

Rochleau v. Town of Millbury, 115 F. Supp. 2d 173, 181 (D. Mass.

2000).

In addition, a § 1983 claim based on supervisory liability

contains a causation requirement.  Plaintiffs "must

affirmatively connect the supervisor's conduct to the

subordinate's violative act or omission." Maldonado-Denis v.

Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994).

**2. Application**

At the motion to dismiss stage, a court must assess whether

plaintiffs have sufficiently pled facts "as to each defendant."

Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009)

(emphasis in original).  Accordingly, while the plaintiffs often

commingle the four school officials in the complaint, the

allegations against Legrand, King, Brand and Ruggiero will be considered separately.

Some allegations against the four school officials are collective.  For example, after broadly outlining Cummings's alleged conduct, the complaint asserts that Legrand, King, Ruggiero and Brand "were informed by various staff members and/or parents that Cummings had committed the above stated abuse" but failed to report the abuse to DCF or impose any discipline.  Such an allegation is too broad and vague to provide the necessary "factual enhancement [that distinguishes] possibility and plausibility of entitlement to relief." Twombly, 550 U.S. at 557 (citation and internal quotations omitted); see Pollard v. Georgetown Sch. Dist., 132 F. Supp. 3d 208, 231 (D. Mass. 2015) (allegation that "administrators were advised of and/or were otherwise aware of the abuse [was too] undetailed and conclusory" to put school district on notice (citation omitted)).

With respect to Legrand and Ruggiero, plaintiffs identify a single specific complaint. They claim that after C.L. suffered physical and verbal abuse in Cummings's classroom, C.L.'s mother "made multiple complaints to King, Legrand, Ruggiero and the School Committee" and requested that they file a complaint with DCF.  The school officials purportedly refused.  The complaint

does not describe when those reports were filed, what form they took, or the reason why Legrand or Ruggiero were required to report to DCF.  C.L.'s allegation, even if accepted as true, does not satisfy the "deliberate indifference" standard nor the causation requirement.

Plaintiffs' § 1983 claim against Brand fares no better. The single specific allegation against Brand is that after N.B. suffered abuse in Cummings's classroom, "N.B.'s parents consistently reported their concerns regarding Cummings' abusive behavior" to King and Brand.  That vague allegation does not support a § 1983 claim.

With respect to King, the complaint contains two additional allegations:

> [After Cummings physically and emotionally abused C.C.,] the incident was reported to King by an assistant teacher. Cummings was suspended for a few days. King did not report this incident to DCF or require any retraining.

> [After Cummings physically injured R.C.1, his] parents reported their concerns regarding [the] abusive behavior to the school administration, specifically including King.

King's conduct is not sufficiently conscience-shocking to survive a motion to dismiss.  First, as discussed below, the § 1983 claims of C.C. and R.C.1 against Cummings will be dismissed because they do not shock the conscience.  It would be

incongruous to allow those plaintiffs to pursue a § 1983 claim against King for failing to report Cumming's conduct while not allowing them to pursue a § 1983 claim against Cummings herself.

The case of Doe1 v. Boston Public Schools also informs the Court's determination. 2019 WL 1005498 (D. Mass. Mar. 1, 2019). In that case, school officials were alleged to have purposefully discouraged and delayed the filing of a mandatory report regarding a sexual assault. Id. at *1. A teacher who did file a report was fired in retaliation. Id. At the motion to dismiss stage, another session in this Court determined that it was a "close question [but that the conduct of the school officials] shock[ed] the conscience." Id. at *4-5.

In the case at bar, plaintiffs do not allege that King discouraged parents or teachers from reporting Cummings's conduct. If anything, the complaint suggests that King may have disciplined Cummings by suspending her after learning about the incident involving C.C and, while King's failure to report certain incidents may have been a "violation[] of state law[,] [t]hat failure does not amount to inherently egregious conduct." J.R. v. Gloria, 593 F.3d 73, 81 (1st Cir. 2010). The lack of detailed allegations regarding King's response also compels the Court to dismiss the claim. See Pollard, 132 F. Supp. at 231. It is troubling that King may have failed to respond properly to

reports of misconduct, as presumably expected, but the
allegations against King do not amount to a § 1983 claim.

In summary, plaintiffs' § 1983 claims against all of the
school officials will be dismissed.  The Court therefore need
not address the officials' qualified immunity defense.

**F. Count VII (Section 1983, Cummings)**

All student-plaintiffs except G.S. bring § 1983 claims
against Cummings and allege that she violated their substantive
due process rights under the Fourteenth Amendment.

**1. Motion to Dismiss**

In her motion to dismiss, Cummings contends that, because
her alleged conduct cannot be deemed as shocking to the
conscience, plaintiffs cannot prevail on their § 1983 claims.
Even if her conduct were conscience-shocking, Cummings maintains
that she is entitled to qualified immunity.

**2. Standard**

Section 1983 provides a cause of action for persons
deprived of a constitutional right by someone acting under the
color of state law. Health & Hosp. Corp. v. Talevski, 143 S. Ct.
1444, 1450 (2023).  To bring a substantive due process claim, a
plaintiff challenging specific acts of state officials must show
(1) that they were deprived of a protected life, liberty or
property interest and (2) that the conduct was so egregious as

to shock the conscience. <u>Pagan</u> v. <u>Calderon</u>, 448 F.3d 16, 32 (1st Cir. 2006).

> With respect to the deprivation of a protected interest, where school authorities, acting under color of state law, deliberately decide to punish a child for misconduct by restraining the child and inflicting appreciable physical pain, . . . Fourteenth Amendment liberty interests are implicated.

<u>Ingraham</u> v. <u>Wright</u>, 430 U.S. 651, 672 (1977).

The "conscience-shocking" standard is a very high one. Mere negligence will not suffice and even bad-faith violations of state law may not be enough. <u>See Gloria</u>, 593 F.3d at 80. Instead, the conduct most likely to be shocking to the conscience "is the conduct intended to injure in some way unjustifiable by any government interest." <u>Chavez</u> v. <u>Martinez</u>, 538 U.S. 760, 775 (2003) (citation and internal quotation markets omitted).  For school officials, "actions that shock the conscience typically involve directly inflicting physical injury." <u>See Doe</u> v. <u>City of New Bedford</u>, 2015 WL 13229204, at *4 (D. Mass. Dec. 4, 2015) (surveying case law).

### 3. Application

The Court will first consider whether the student-plaintiffs other than G.S., who did not file such a claim, can bring a § 1983 claim against Cummings.

First, while A.F. brought a § 1983 claim against Cummings, the complaint does not allege that Cummings inflicted any physical pain on A.F.  A.F.'s claim will be dismissed.

In her motion to dismiss, Cummings adopts and relies upon the arguments of her co-defendants, including the Town and school officials.  Those defendants assert that all claims brought by J.L. are time-barred because his cause of action was no longer tolled after he turned 18 in 2015.  They do not contest J.L.'s incapacitation but insist that, because J.L.'s mother was appointed to be his legal guardian in 2015, his mental incapacitation is not dispositive and the statute of limitations with respect to his claim has since expired.  That is incorrect.

Massachusetts statutory law tolls any statute of limitations until "after the disability is removed." M.G.L. c. 260, § 7.  The SJC has held that "the appointment of a guardian has no effect on the protections afforded by the disability tolling statute." O'Brien v. Massachusetts Bay Transp. Auth., 405 Mass. 439, 444 (1989).  The statute of limitations for J.L.'s cause of action therefore continues to be tolled.

Cummings insists that the claims of the remaining student-plaintiffs must be dismissed because she is entitled to qualified immunity.  A defense of qualified immunity is properly

considered at the motion to dismiss stage. See Castagna v. Jean, 955 F.3d 211 (1st Cir. 2020).

Determining whether a defendant is entitled to qualified immunity is a two-step inquiry.  A court must decide (1) whether the facts alleged make out a violation of a constitutional right and (2) whether the right was "clearly established" at the time of the defendant's alleged violation. Maldonado v. Fontanes, 468 F.3d 263, 269 (1st Cir. 2009) (citing Pearson v. Callahan, 555 U.S. 223, 232 (2009)).  A reviewing court may consider those steps in whatever order it deems appropriate. Pearson, 555. U.S. at 242.

> Again, in 1977, the Supreme Court explained that
>
> where school authorities, acting under color of state law, deliberately decide to punish a child for misconduct by restraining the child and inflicting appreciable physical pain . . . Fourteenth Amendment liberty interests are implicated.

Ingraham v. Wright, 430 U.S. 651, 674 (1977).  The Third, Fourth, Sixth, Eighth, Ninth and Tenth Circuits have all relied on Ingraham to hold that "excessive corporal punishment can violate a student's substantive due process rights." P.B. v. Koch, 96 F.3d 1298, 1302 (9th Cir. 1996) (summarizing case law). While the First Circuit has not considered this precise issue, it has stated that a consensus of three or more circuits can "clearly establish" a right. McCue v. City of Bangor, 838 F.3d

55, 64 (1st Cir. 2016).  It was therefore well established at the time of the alleged conduct that a teacher could not use excessive force against a student.

The question remains whether the facts alleged, if accepted as true, state a violation of constitutional law.  Unjustified infliction of physical injury is the kind of official school action that courts have previously found to be shocking of the conscience. See City of New Bedford, 2015 WL 13229204, at *4; Webb v. McCullough, 828 F.2d 1151, 1159 (6th Cir. 1987) (reversing district court's grant of summary judgment regarding a § 1983 claim against a principal where "it [was] possible that the [physical] blows were not disciplinary in nature").

Cummings contends that her conduct simply involved the use of physical prompts, restraints or the raising of her voice, which she avers are permissible acts for a teacher tasked with overseeing a class of disabled students.  While some use of physical prompts is permitted when instructing disabled students, the complaint alleges a pattern of excessive physical punishment with respect to at least some student-plaintiffs. See Ingraham, 430 U.S. at 672.

While a number of student-plaintiffs allege some kind of physical abuse by Cummings, only N.B., J.L and C.B. allege conscience-shocking facts and therefore state a claim for

violation of their substantive due process rights.  Again,

conduct only shocks the conscience when it is

> so severe [and] so inspired by malice or sadism . . .
> that it amounted to a brutal and inhumane abuse of
> official power . . . .

Gonzalez-Fuentes v. Molina, 607 F.3d 864, 881 (1st Cir. 2010)

(citation omitted).  A brief review of the complaint suggests

that some plaintiffs have alleged that Cummings inflicted

unjustified physical injury on them:

> Cummings injured N.B.'s wrists while dragging him. .
> Following this incident, N.B.'s pediatrician filed a
> complaint with DCF. . . . [A subsequent injury led
> N.B.'s pediatrician to again file a complaint with
> DCF.]  N.B. would often say "no school, teacher hurt
> me".

> In August 2005 Cummings put J.L. in a chair, pushed
> him tight up against a table and sat directly behind
> him. Cummings would not let J.L. move for almost an
> hour. Cummings grabbed J.L. under the arms several
> times, forcing him to sit up. During this time, J.L.
> was screaming. As a result of this incident, J.L.
> developed broken blood vessels in his eyes. An
> assistant teacher asked Cummings to send J.L. to the
> school nurse to be seen for his eyes, but Cummings
> refused to allow this to happen.

> C.B. came home from school on multiple occasions with
> bruises and scratches on his face and back. He also
> had bruises on his side and legs. On one occasion,
> C.B. came home with a large bruise in the area of his
> tailbone. C.B. told his mother that Cummings had
> pushed him.

The remaining student-plaintiff allegations, while troubling, do not meet the demanding conscience-shocking standard.

In summary, N.B., J.L. and C.B. state plausible claims under § 1983 against Cummings.  Cummings is not entitled to qualified immunity with respect to those claims.  The other student-plaintiffs' § 1983 claims against Cummings will be dismissed.

### G. Count VIII (Assault and Battery, Cummings)

All student-plaintiffs except G.S. have brought assault and battery claims against Cummings.  As discussed supra, J.L.'s claim is not time-barred.  Under Massachusetts law assault and battery

> is the intentional and unjustified use of force upon the person of another, however slight, or the intentional doing of a wanton or grossly negligent act causing personal injury to another.

Commonwealth v. McCan, 277 Mass. 199, 203 (1931).

Student-plaintiffs allege that Cummings committed the tort of assault and battery without legal justification, cause, excuse or privilege.

Cummings responds that the claims fail because teachers are permitted to use physical prompts.  She insists that her conduct was in line with the intervention practices identified in the

Applied Behavioral Analysis ("ABA") protocol.  Under the ABA, a teacher may "use physical prompts, including touching, guiding, and blocking," to assist students. Doe v. Dep't of Children & Families, 2014 Mass. Super. Lexis 216, at *2 (Dec. 8, 2014).

The Court rejects Cummings's contention that her use of force was so clearly justified under Massachusetts law and the ABA protocol that the complaint does not present a plausible claim.

### H. Count IX (MCRA, Cummings)

All student-plaintiffs except G.S. have brought claims pursuant to the Massachusetts Civil Rights Act, M.G.L. c. 12 § 11I ("MCRA") and allege that Cummings violated their civil rights "by . . . use of threats, intimidation and coercion."

#### 1. Standard

To establish a claim under the MCRA, a plaintiff must prove that

> (1) the exercise or enjoyment of some constitutional or statutory right; (2) has been interfered with, or attempted to be interfered with; and (3) such interference was by threats, intimidation, or coercion.

Currier v. Nat'l Bd. of Med. Examiners, 462 Mass. 1, 12 (2012).

The MCRA is analogous to § 1983 claims with the added requirement of interference by use of threats, intimidation, or coercion. See Raiche v. Pietroski, 623 F.3d 30, 40 (1st Cir.

2010).  Under the statute, the SJC define "threats" to mean "intentional exertions of pressure that would make another fearful or apprehensive of injury or harm." Meuser v. Fed. Express Corp., 564 F.3d 507, 519 (1st Cir. 2009). "Intimidation" requires "putting in fear for the purpose of compelling or deterring conduct." Id.  "Coercion" is defined as force that is either physical or moral which "constrain[s] [someone] to do against his will something he would not otherwise have done." Id.

The standard for determining whether conduct constitutes threats, intimidation or coercion is an objective, reasonable person standard. Currier, 462 Mass. at 13.  The mere violation of a protected right by itself is insufficient to establish a claim under the MCRA. Id.

### 2. Application

The MCRA claims of student-plaintiffs except for N.B., J.L. and C.B. will be dismissed because their § 1983 claims will be dismissed. See Raiche, 623 at 40.  The Court will simply determine whether N.B., J.L. and C.B. plausibly allege that Cummings interfered with the exercise or enjoyment of some constitutional or statutory right "by threats, intimidation, or coercion." Currier, 462 Mass. at 12.  She is not entitled to qualified immunity with respect to the remaining plaintiffs'

-36-

MCRA claims for the same reasons that she is not entitled to qualified immunity for their § 1983 claims.

It would be premature to dismiss the MCRA claims of N.B., J.L. and C.B. at this stage because they have plausibly alleged that Cummings violated their substantive due process rights.  An objective, reasonable jury could find that Cummings violated those rights through use of threats, intimidation or coercion as defined by the SJC.

All Count IX claims against Cummings other than those brought by N.B., J.L. and C.B. will be dismissed.

**I. Count X (Section 1983, Fitzgerald)**

Student-plaintiffs have brought § 1983 claims against Fitzgerald in Count X but that Count has been dismissed by joint stipulation with respect to plaintiffs C.B., J.L. and G.S.

The complaint does not allege that Fitzgerald personally abused the student-plaintiffs.  Instead, it suggests that, by failing to intervene while Cummings physically and emotionally abused student-plaintiffs, Fitzgerald violated the students' Fourteenth Amendment rights.

The remaining § 1983 claims against Fitzgerald will be dismissed.  In D'Agostino, another session in this Court confronted a similar claim at the summary judgment stage after a plaintiff brought a § 1983 claim against an assistant teacher

because she failed to intervene when a teacher sexually harassed her. See Doe v. D'Agostino, 367 F. Supp. 2d 157, 172-73 (D. Mass. 2005).  That session held that the assistant teacher could not be held liable when she was neither accused of abusing the minor-plaintiff herself nor of being the supervisor of the alleged abuser. Id.  While that analysis occurred at a later stage in the case, the same logic applies.  In their complaint, plaintiffs do not allege that Fitzgerald personally abused any pupil or that she supervised Cummings.

Because student-plaintiffs do not present a plausible § 1983 claim against Fitzgerald, the Court declines to consider the applicability of the doctrine of qualified immunity.

**J. Count XI (Section 1983, Talbot)**

G.S. brings a § 1983 claim against Talbot and alleges that Talbot violated his substantive due process rights when she abused him.  Again, the entire claim against Talbot is contained in a single, two-sentence paragraph in which G.S. accuses Talbot of squeezing his arm and neck and rubbing his chest in an aggressive matter.

Such allegations, even if accepted as true, do not amount to "stunning" evidence of misconduct or shock the conscience. See Varney v. Richards, 2015 WL 2381161, at *3 (D. Me. May 19, 2015) (ill-defined allegations of abuse by education technician

"simply [did] not describe the conscience-shocking conduct that is necessary to sustain a <u>constitutional</u> claim" (emphasis in original)); <u>see</u> <u>also</u> <u>Muskrat</u> v. <u>Deer Creek Pub. Schs.</u>, 715 F.3d 775, 787 (10th Cir. 2013) (finding at summary judgment stage that a teacher's slaps on student's cheek and arm and physical restraint of student did not rise to level of constitutional tort).  G.S. has failed to state a plausible substantive due process claim and Count XI will therefore be dismissed.

### K. Count XII (Assault and Battery, Talbot)

Talbot did not seek to dismiss Count XII and did not file an answer as required by Fed. R. Civ. P. 12(a)(1)(A). Talbot will be given 14 days from the date of this memorandum and order to file responsive pleadings or otherwise be defaulted.

### M. Count XIII (MCRA, Talbot)

Because G.S.'s § 1983 claim against Talbot will be dismissed, so also will be his MCRA claim. <u>S. Middlesex Opportunity Council, Inc.</u> v. <u>Town of Framingham</u>, 2008 WL 4595369, at *20 (D. Mass. Sept. 30, 2008) ("[T]here is no indication that the MCRA was intended to provide broader relief than that provided by [Section] 1983.").

### N. Count XVII (Loss of Consortium)

Finally, parent-plaintiffs bring claims for loss of consortium against all defendants pursuant to M.G.L. c. 231,

§ 85X ("Section 85X").  The complaint alleges that each student-plaintiff is intellectually disabled and totally dependent on his or her parents for support because of the conduct of defendants.

### 1. Standard

Under Massachusetts law,

> [t]he parents of a minor child or an adult child who is dependent on his parents for support shall have a cause of action for loss of consortium of the child who has been injured against any person who is legally responsible for causing such injury.

Mass. Gen. Laws c. 231, § 85X.

Section 85X presents a demanding standard. Parents may only recover only if their child's injuries

> are of such severity and permanence as to render [her] physically, emotionally, and financially dependent on them and that, as a result, their lives have been significantly restructured and their expectations of enjoying those experiences normally shared by parents and children have been seriously impaired.

Reckis v. Johnson & Johnson, 471 Mass. 272, 303 (2015) (quoting Monahan v. Methuen, 408 Mass. 381, 388-389 (1990)).

The Court must therefore determine whether there is a plausible claim that the impacted students will "remain dependent upon [their] parents, physically, emotionally, and financially, for the indefinite future." Id. at 303 (internal citation and quotation marks omitted).  While a claim of loss of

-40-

consortium is an independent cause of action, it is "derivative in nature [and therefore requires] an underlying tortious act." Thomas v. Town of Chelmsford, 267 F. Supp. 3d 279, 315 (D. Mass. 2017) (citation omitted).

### 2. Town and school officials

Because all tort claims against the Town of Wilmington and the school officials will be dismissed and a loss of consortium claim is derivative in nature, plaintiffs' claim for loss of consortium will be dismissed as well.

### 3. Cummings

Cummings seeks dismissal on the following grounds: 1) the claims brought by the parents of A.F., C.L., J.L., C.B. and C.C. are time-barred; 2) the complaint does not sufficiently allege that the injuries suffered by student-plaintiffs are permanent; and 3) the claims fail because no underlying tort claim survives.  The Court will consider those arguments in turn.

A cause of action for loss of consortium is subject to a three-year statute of limitations. Mass. Gen. Laws ch. 260, § 2A.  "While loss of consortium and the underlying claim will usually accrue at the same time, this may not always be true." Genereux v. Am. Beryllia Corp., 577 F.3d 350, 363 (1st Cir. 2009).  Plaintiffs, however, give the Court no reason to stray from the general rule.  Accordingly, to avoid being time-barred,

the underlying incidents must have occurred after March 23, 2020, or three years prior date on which plaintiffs filed their complaint.[11]

Based on the allegations made in the complaint, the claims of the parents of A.F., C.L., J.L., C.B. and C.C. all accrued well before March 23, 2020.  Because the claims for loss of consortium are brought by the parent-plaintiffs individually rather than on behalf of student-plaintiffs, the statute of limitations is not tolled until the minor children reach the age of majority.  Cummings is correct that the claims of those parent-plaintiffs are time-barred.

That leaves for consideration only the claims for loss of consortium brought by the parents of N.B., R.C.1, R.C.2 and R.F.[12]  Cummings asserts that even if the Court finds that she caused those students to suffer injury, their injuries were not so permanent as to render the students "physically, emotionally, and financially dependent" on their parents. Reckis, 471 Mass. at 303 (quoting Monahan, 408 Mass. at 389).

---

[11] Neither party points out that the SJC tolled all civil statutes of limitations between March 17, 2020 and June 30, 2020 due to the COVID-19 pandemic. See Shaw's Supermkts., Inc. v. Melendez, 488 Mass. 338, 341 (2021), but, in any event, such a tolling period would have no effect on the outcome of this analysis.

[12] As noted supra, the claims of G.S. against Cummings will be dismissed because there is no suggestion in the complaint that Cummings and G.S. had any interaction.

The Court agrees with Cummings that the allegations in the complaint cannot support loss of consortium claims because the remaining parent-plaintiffs fail to allege plausibly that Cummings's conduct resulted in any permanent injury.  The complaint: 1) concedes that after R.C.1's parents removed him from Cummings's classroom, his "regressions ceased and he began making significant improvements," 2) does not suggest that the injuries of R.C.2 or R.F. "are of such severity and permanence" that the student-plaintiffs are emotionally, physically and financially dependent on their parents and 3) alleges that, while N.B. is still in trauma therapy because of Cummings's abusive conduct, it is also true that N.B.'s condition has improved considerably and that he hasn't suffered any long-term physical or financial harm.

The complaint does claim that each student-plaintiff "is totally dependent on [their] parents for support" but such a conclusory allegation does not, by itself, prevent dismissal of an insufficient claim. See Iqbal, 556 U.S. at 678-79.

In summary, all of parent-plaintiffs' loss of consortium claims against Cummings will be dismissed.  The Court declines to consider Cummings's argument that all claims fail due to the dismissal of the underlying tort claims.

**4. Talbot**

Talbot seeks dismissal of G.S.'s pending loss of consortium claim on the grounds that 1) she cannot be held liable because municipalities cannot be sued under Section 85X and 2) the claim of the parents of G.S. is time-barred.  Both arguments are unavailing.

The Court agrees with Talbot that municipalities cannot be held liable under Section 85X but Talbot is not a municipality. Talbot is a "person" for the purposes of Section 85X and can therefore be held liable. See Thomas, 267 F. Supp. 3d at 315 (holding plaintiffs could not bring loss of consortium claim against town but could bring claim against public school teachers).

The loss of consortium claim against Talbot also is not time-barred.  The complaint alleges that Talbot physically abused G.S. "[i]n 2019 and 2020," and claims one specific incident occurred "[i]n March 2020."  Talbot argues that because the complaint was originally filed on March 23, 2023, to state a claim the underlying conduct must have occurred after March 23, 2020.  She asserts that the incident in question occurred on March 5, 2020, but, as noted above, the SJC tolled all civil statutes of limitations from March 17, 2020 through June 30, 2020, see Shaw's Supermkts., Inc. v. Melendez, 488 Mass. 338,

341 (2021), and in this case that makes all the difference.  The
complaint was filed within the applicable statute of
limitations.

As the Court noted supra, Talbot will be given 14 days to
file responsive pleadings and the Court will therefore withhold
judgment on the loss of consortium claim, which is derivative in
nature.

**5. Fitzgerald**

The underlying tort claims against Fitzgerald will be
dismissed.  Because the remaining loss of consortium claims
against Fitzgerald are derivative in nature, they will be
dismissed as well.

**ORDER**

For the foregoing reasons,

- the motion to dismiss of the Town of Wilmington and
  the defendant school officials (Docket No. 17) is
  **ALLOWED**;

- the motion to dismiss of defendant Fitzgerald
  (Docket No. 20) is **ALLOWED**;

- the motion to dismiss of defendant Talbot (Docket
  No. 29) is, with respect to Counts IV, V, XI, XIII,
  and XVII, **ALLOWED**.  Talbot shall, within 14 days of
  this order, file responsive pleadings to Count XII
  or otherwise be defaulted.  The Court withholds
  judgment on Talbot's motion to dismiss Count XVII
  because it is derivative in nature;

- the motion to dismiss of defendant Cummings (Docket
  No. 32) is

        with respect to Count IV, **ALLOWED**;

        with respect to Count V, as to C.B, R.C.1,
        R.C.2, A.F., J.L., G.S., C.C. and R.F.,
        **ALLOWED**, but, as to N.B. and C.L., **DENIED**;

        with respect to Count VII, as to C.L., R.C.1,
        R.C.2, A.F., C.C. and R.F., **ALLOWED**, but, as to
        J.L., N.B. and C.B., **DENIED**;

        with respect to Count VIII, **DENIED**;

        with respect to Count IX, as to C.L., R.C.1,
        R.C.2, A.F., C.C. and R.F., **ALLOWED**, but, as to
        J.L., N.B. and C.B., **DENIED**; and

        with respect to Count XVII, **ALLOWED**.

- the motion of Cummings for oral argument (Docket No. 34) is **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated:  March 4, 2024