United States District Court
District of Massachusetts

```
                              )
Roberta Biscan, et al.,       )
                              )
           Plaintiffs,        )
                              )      Civil Action No.
           v.                 )      23—11170-NMG
                              )
Town of Wilmington, et al.,   )
                              )
           Defendants.        )
                              )
```

## MEMORANDUM & ORDER

GORTON, J.

This action arises out of allegations that two Wilmington, Massachusetts public school teachers abused disabled students in their care over the course of several years.  The complaint, filed by a group of affected parents ("parent-plaintiffs") for themselves and on behalf of their children ("student-plaintiffs") (collectively, "plaintiffs"), seeks relief from the teachers individually, from the Town of Wilmington ("the Town" or "Wilmington") and from certain school officials.

This Court previously allowed a motion by the Town and school officials to dismiss Count I of the complaint, which alleges that the Town negligently failed to train and supervise

one of the abusive teachers and continued to employ her despite multiple reports of her misconduct.

Pending before the Court is plaintiffs' motion to reconsider the dismissal Count I due to an intervening change in the law. For the reasons that follow, the motion to reconsider will be allowed and, upon reconsideration, the Town's motion to dismiss will be allowed, in part, and denied, in part.

## I. Background

### A. Facts

The Court assumes familiarity with the allegations in the complaint, which are discussed at length in this Court's order on the motions to dismiss (Docket No. 45). To summarize briefly, two Wilmington public school teachers, Kimberly Cummings ("Cummings") and Jessica Talbot ("Talbot"), are alleged to have abused, physically and emotionally, young disabled children in their classrooms. Victoria Fitzgerald ("Fitzgerald"), who was an assistant teacher in Cummings' classroom, purportedly failed to intervene or report the abuse. The Wilmington School District ("the School District") and school officials are said to have failed to train, supervise or

terminate the allegedly abusive teachers, despite receiving reports of abuse by staff members and parents.[1]

The complaint does not include allegations that any other school official personally perpetuated any physical or verbal abuse. Instead, student-plaintiffs N.B., R.C.1, R.C.2, G.S. and R.F. bring a common-law negligence claim against the Town, alleging that it owed a duty of care to the student-plaintiffs and should have protected them from the misconduct of Cummings and Talbot. Specifically, the Town purportedly breached its duty by negligently failing to train and supervise Cummings and Talbot and by continuing to employ them even after school staff members and parents repeatedly reported their concerns to school officials.

The complaint alleges multiple specific instances of school officials ignoring or inadequately addressing reports of the abuse, including, but not limited to:

1) In 2005, J.L's parents reported their child's abuse at the hands of Cummings; the school removed J.L. from Cummings' class two months after the parents reported the abuse but took no steps to discipline Cummings.

---

[1] According to the Town's motion to dismiss, the Wilmington School Committee is the final policymaker with respect to the Wilmington School District.

2) Between September, 2009, and March, 2010, the parents of student C.B. reported Cummings' abuse of C.B. to school administrators but no action was taken other than transferring C.B. out of Cummings' classroom.

3) Between 2008 and 2013, school staff reported to school administrators multiple incidents of Cummings' disconcerting behavior, including "potentially harmful physical interactions with the pre-kindergarten and kindergarten students in her classroom," but action was taken.

4) Between 2014 and 2016, student C.L. was physically and verbally abused by Cummings and her assistant, whereupon C.L's mother made multiple complaints to school officials and the School Committee and requested that they file complaints with the Massachusetts Department of Children and Families ("DCF"). School officials refused to do.

5) In March, 2021, the parents of student R.C.1 reported concerns regarding Cummings' abusive behavior to school officials, resulting in R.C.1 being removed from Cummings' classroom but no disciplinary action against Cummings.

6) Between February and May, 2021, N.B. suffered physical injuries at the hands of Cummings which N.B.'s

-4-

pediatrician twice reported to DCF.  N.B.'s parents
reported their concerns to school officials and, although
N.B. was removed from Cummings' classroom, no
disciplinary action was taken.

The complaint specifically names four school officials as
school district employees to whom parents and staff members
reported Cummings' abuse.  Those school officials nevertheless
did not, according to plaintiffs, impose appropriate
disciplinary action against Cummings, including required
retraining, or report the abuse to DCF, as required by law.[2]  The
complaint alleges that only two disciplinary acts were taken by
the school in the form of temporary suspensions without pay,
once in 2014 and again in 2020.  Ms. Cummings was also required
to attend safety training which she did not complete.

**B.   Procedural History**

In March, 2023, plaintiffs filed their initial 17-count
complaint in Middlesex Superior Court.  Defendants removed the
action to federal court in May, 2023.  Several of the counts
were subsequently dismissed, either by stipulation of the
parties or by order of this Court following motions to dismiss.

---

[2] M.G.L.c. 119, § 51A designates teachers as mandated reporters who must, if
they have "reasonable cause to believe" a child is being abused, "immediately
communicate" with DCF and file a written report within 48 hours.

Some of the counts were dismissed in their entirety while others were dismissed only as against specific defendants.

As relevant here, the Town filed a motion to dismiss in June, 2023, arguing that the negligence claim (Count 1): 1) was time-barred, 2) failed to comply with the pre-suit presentment required by the Massachusetts Tort Claims Act ("MTCA"), 3) failed to state a claim upon which relief can be granted and 4) was barred by the immunity afforded under Section 10(j) of the MTCA, M.G.L. c. 258, §§ 1 et seq. ("Section 10(j)"). The Court allowed the motion, concluding that Section 10(j) conferred immunity to the Town.[3]

In March, 2024, plaintiffs filed their motion for reconsideration of the order dismissing the negligence claim against the Town (Count I). Plaintiffs assert that Theisz v. Massachusetts Bay Transportation Authority, 103 Mass. App. Ct. 822 (2024), a Massachusetts Appeals Court ("MAC") case decided after this Court published its ruling, confirms that Section 10(j) does not confer immunity to the Town in under the circumstances alleged in the complaint. Defendants oppose the motion on the grounds that this Court ought not follow the MAC's

---

[3] The Court did not address defendant's alternative grounds for dismissal in its original order after concluding that Section 10(j) immunity applied.

decision because it is inconsistent with decades of precedent from the Massachusetts Supreme Judicial Court ("SJC").

The SJC granted the application for Further Appellate Review ("FAR") in Theisz in April, 2024. At a subsequent status conference, the parties agreed that the Court should retain plaintiff's motion under advisement pending the SJC's ruling. The SJC issued its opinion affirming the MAC's ruling in March, 2025. Theisz v. Mass. Bay. Transp. Auth., SJC-13624, 2024 WL 5465208 (Mar. 14, 2025).

## II.  Motion for Reconsideration

### A.  Legal Standard

Fed. R. Civ. P. 59 provides a method for a federal court to alter or amend its judgment in the rare circumstance where the movant demonstrates that an intervening change in controlling law, a clear legal error or newly discovered evidence warrants modification of the judgment. In re Genzyme Corp. Sec. Litig., 754 F.3d 31, 46 (1st Cir. 2014) (citing Fed. R. Civ. P. 59). The United States Supreme Court has further cautioned restraint in exercising the court's discretionary power:

> [C]ourts should be loathe to reconsider orders in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.

Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988) (quoting Arizona v. California, 460 U.S. 605, 618 n.8 (1983)) (internal quotation marks omitted).

A party cannot use a motion for reconsideration to "rehash arguments previously rejected or to raise ones that" could or should have been made before a judgment was issued. Soto-Padro v. Public Bldgs. Auth., 675 F.3d 1, 9 (1st Cir. 2012). Mere disagreement with a judicial decision is not an adequate basis for reconsideration. Ofori v. Ruby Tuesday, Inc., 205 F. App'x 851, 852-53 (1st Cir. 2006).

### B.  Application

The MTCA generally renders public employers liable for the negligent acts of their employees while acting within the scope of their employment. M.G.L.c. 258, § 2. Section 10(j), however, exempts public employers from liability for

> any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.

(Emphasis added).

In its original order allowing the Town's motion to dismiss, the Court concluded that Section 10(j) shielded the Town from liability because the complaint did not allege that

-8-

the Town was the "original cause" of the alleged injuries
suffered by the students.  In doing so, the Court distinguished
between the acts of the Town itself (and its officials) and
those of the alleged tortfeasors.

Theisz expressly rejects that interpretation of Section
10(j) in the context of a public employer's negligence in
hiring, promoting, retaining and supervising an employee known
to have committed intentional torts.  In Theisz, the SJC ruled
that the MBTA could be held liable for negligence where an
employee bus driver with a known history of anger management
problems, including assault, assaulted a bus passenger.  The
Court found that Section 10(j) is inapplicable where

> a plaintiff has been directly injured by an on-duty public
> employee (as opposed to by a third person or by a private
> or naturally occurring risk).

2024 WL 5465208, at *1.  The SJC further concluded that Section
10(j) does not create a safe harbor where the public employer

> commits a breach of the ordinary duty to exercise
> reasonable care in the selection of an employee to interact
> with the public by choosing to place an employee in that
> position despite knowing of the employee's untreated,
> assaultive behavior.

Id.

The same logic applies here.  Section 10(j) does not
immunize the Town from suit because 1) Cummings and Talbot
allegedly committed the torts while on duty and are not

-9-

considered "third part[ies]" and 2) the Town, as a public employer, is alleged to be the "original cause" of the students' injuries by virtue of its negligence in selecting an employee known to be dangerous to interact with the public.  The Town is therefore not immune from suit under Count I.

### III. **Motion to Dismiss**

Having concluded that Count I will not be dismissed on immunity grounds, the Court turns to consideration of the other grounds upon which the Town seeks dismissal, namely that: 1) the claims of student-plaintiff J.L, including Count I, are time-barred, 2) student-plaintiffs C.B., J.L, C.C., C.L and A.L.: failed to comply with the MTCA's pre-suit presentment requirements and 3) the complaint fails to state a claim upon which relief can be granted.

As a preliminary matter, the first two arguments of defendant are now moot because the relevant student-plaintiffs previously stipulated to dismiss Count I voluntarily (Docket No. 31).  As such, the only dispute left to resolve is whether the complaint is deficient under Fed. R. Civ. P. 12(b)(6).

#### A.    **Legal Standard**

To survive a motion to dismiss, a claim must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v.

-10-

Twombly, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may only look to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference and matters of which judicial notice can be taken. Nollet v. Justices of Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000).

Furthermore, the Court must accept all factual allegations in the claim as true and draw all reasonable inferences in the claimant's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  If the facts in the claim are sufficient to state a cause of action, a motion to dismiss will be denied. See Nollet, 83 F. Supp. 2d at 208.  That standard is

> intended to screen out claims in which the factual allegations of the complaint are too scanty or too vague to render the claims plausible.

Rios-Campbell v. U.S. Dep't of Com., 927 F.3d 21, 25 (1st Cir. 2019).

Although a court must accept as true all the factual allegations in a claim, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). Threadbare recitals of legal elements which are supported by mere conclusory statements do not suffice to state a cause of action. Id.

-11-

**B.    Application**

The Court finds that plaintiffs have satisfied the low
threshold of pleading each element of their negligence claim
sufficient to survive the motion to dismiss.

In Massachusetts, liability for negligence requires a
plaintiff to show that the defendant(s)

> 1) owed a legal duty to the plaintiff, 2) which the
> defendant breached, thereby 3) causing injury to the
> plaintiff.

LePorin v. Parzych, 610 F. Supp. 3d 314, 316-17 (D. Mass. 2022)
(citing Davis v. Westwood Grp., 420 Mass. 739, 652 N.E.2d 567,
569 (1995)).  The complaint asserts that the Town owed a duty to
exercise reasonable care in protecting students in the
Wilmington public school system.  It describes several instances
in which school administrators were warned about the abusive
behavior of its employees but took little, if any, action.

With respect to causation, defendant argues that the
complaint fails to allege that the Town's negligent training or
supervision of its teachers "materially contributed" to causing
the abuse suffered by the student-plaintiffs.  Defendant
mistakes the elements of the Section 10(j) safe harbor for that
of a negligence claim.  The case cited by defendants, Kent v.
Commonwealth, 437 Mass. 312 (2002), merely defines what it means
for a public employer to be the "original cause[]" of violent

-12-

conduct by a third person under Section 10(j). As the Court has explained herein, this does not immunize defendant in the wake of Theisz because a public employer is considered the "original cause" of a plaintiff's injuries if the employer negligently permits its employee to interact with the public despite knowing that the employee has committed intentional torts while on duty.

Massachusetts courts have held that the "material contribution" test of Section 10(j) incorporates a test of foreseeability, i.e., a test of proximate causation. Baptista v. Bristol Cty. Sheriff's Dept., 100 Mass. App. Ct. 841, 855-56 (2022). The SJC in Theisz invalidates defendant's argument, concluding that just as with private employers, public employers can be held liable when they fail in their duty:

> [to] exercise[e] reasonable care to ensure that their employees do not cause foreseeable harm to a foreseeable class of plaintiffs.

2024 WL 5465208, at *8 (quoting Helfman v. Northeastern Univ., 485 Mass. 308, 326 (2020)). Plaintiffs have sufficiently alleged that the Town's failure to supervise, discipline and report teachers known to be violent towards students caused foreseeable harm.

ORDER

For the foregoing reasons,

- plaintiffs' motion for reconsideration (Docket No. 50) is **ALLOWED**; and, upon such reconsideration

- defendants' motion to dismiss Count I (Docket No. 17) is

    with respect to Count I, **DENIED**; but

    with respect to Counts II, III, IV, V, VI and XVII, **ALLOWED**.

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated: March 24, 2025

-14-